UNITED STATES of America,
Plaintiff-Appellee,

v.

Ralph E. BRUBAKER,
Defendant-Appellant.

No. 81–1261.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 6, 1981.

Decided Nov. 12, 1981.

Rehearing Denied Dec. 28, 1981.

William G. Schick, Rock Island, Ill., for defendant-appellant.

Terry G. Harn, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before PELL, SPRECHER, and BAUER, Circuit Judges.

PELL, Circuit Judge.

The defendant, Ralph E. Brubaker, pleaded guilty to two counts of embezzlement on a twenty-two count indictment, 18 U.S.C. § 656, and a one count information charging income tax evasion, 26 U.S.C. § 7201. The district court imposed the maximum sentence of five years of imprisonment on each of the two counts of the indictment, the

terms to be consecutive, and a three-year concurrent term on the one count information. In addition, the court fined the defendant $5,000.00 on each count, a total of $15,000.00. This appeal challenges the sentences.

## I.

The indictment charged Brubaker with twenty-two counts of embezzlement of bank funds administered by him in his capacity as. trust officer at the Rock Island Bank in Rock Island, Illinois. Government attorneys presented a negotiated plea agreement to the district court on December 16, 1980, proposing that the Government dismiss the twenty-two count indictment and substitute a two-count information consisting of one count of income tax evasion and one count of embezzlement. The district court refused to accept the plea agreement for the express reason that the reduction of a twenty-two count indictment to a two-count information would be an effective control on the court's discretion over sentencing and available punishment which the court was unwilling to allow without knowing more about the facts of the case.

Three days later, another plea agreement was presented to the district court. In this agreement the defendant would plead guilty to two counts of the original twenty-two count indictment and to the one count information for tax evasion. This agreement was accepted by the district court at the sentencing hearing held on February 5, 1981. At that time, the judge indicated that he had carefully read the presentence report and the eleven letters submitted to the court on the defendant's behalf, as well as a transcript of the sentencing hearing in

the prior state court prosecution of the defendant for felony theft. Following testimony by witnesses on defendant's behalf and statements of counsel, the judge sentenced the defendant as previously set forth herein.

On February 13, 1981, the defendant appealed and on the same day submitted an application for reduction of sentence. The application for reduction of sentence stated that the defendant and his wife had signed promissory notes and had given mortgages on their home in restitution of the amount involved in an earlier state court prosecution concerning funds embezzled from the estate of Margaret Winbigler and that they had sold an empty lot next to their house in a continuing effort to make full restitution of all the funds misappropriated from the Rock Island Bank. Brubaker's application for release pending appeal was granted by the district court.

A year earlier, on January 16, 1979, in state court, Brubaker pleaded guilty to the charge that he had unlawfully converted trust funds from the estate of Margaret Winbigler in violation of state law, Ill.Rev. Stat. Ch. 38 § 16–1 (1979). That offense was not included among the charges presented in the federal indictment. At the time of sentencing, evidence in aggravation of the sentence was presented to the state court consisting of seventeen additional charges of embezzlement of funds from other estates. However, there were no substantive charges brought on the seventeen additional charges.[1] The state court sentenced Brubaker to two years of probation and 1,000 hours of public service work.[2]

At the time of sentencing by the district court, Brubaker was sixty-three years old

---

1. This was in keeping with an agreement between the United States Attorney and the State's Attorney involved in this case whereby the federal prosecutors undertook the further investigation and prosecution of Ralph Brubaker on the additional offenses, which would be submitted to the state court only in aggravation of sentence without further charges being brought in that proceeding.

2. Included in the evidence submitted in mitigation was a promissory note and a real estate mortgage given as security for the note in full restitution of the sum of $27,909.09, which is the amount involved in the Winbigler estate. Together with the Winbigler estate charge, the seventeen additional charges added up to a total of $55,354.03 in embezzled funds. The state court was apprised of this total figure during the sentencing proceedings in that court.

and a life-time resident of Rock Island, Illinois. For forty-one years he had been married to Pauline Brubaker. The Brubakers had adopted two children and cared for approximately twenty-five foster children over the years. According to the presentence report submitted to the district court, Brubaker had completed school up to the tenth grade when family obligations forced him to drop out in order to support his younger siblings following the death of his father. He nonetheless earned a G.E.D. certificate during military service and in 1959 graduated from a trust management course offered by the Illinois Banker's Association Trust School in Chicago, Illinois. He served two tours of active duty in the military and was honorably discharged.

Brubaker had no criminal record of any kind prior to the discovery of the series of embezzlements committed over a four-year period from 1975 to 1979. According to the federal presentence report, these embezzlements were mainly of estates and trusts of elderly and mentally incompetent persons and amounted to a total sum of $75,800.48, as determined by the FBI investigation. Brubaker retired from his position as Acting Head of the Trust Department after thirty years of employment at the Rock Island Bank upon admitting to officers of the bank that he had embezzled funds from the Winbigler estate. According to a statement by Brubaker in the presentence report, his reason for embezzling the funds was that he felt that he was not being promoted or given the salary he deserved over the last eight years under the current president.

The defendant has been a city official holding the office of Rock Island City Treasurer from 1958 until 1977, when that position became a full time appointive position. According to the presentence report, the records of the United States Attorney indicated that an investigation by the Internal Revenue Service had been conducted regarding allegations that the defendant as Rock Island Treasurer and other city officials were misappropriating city funds for personal gain and that this investigation had led to the discovery that the defendant

had embezzled funds from the Winbigler estate.

At the state court hearing, fifteen witnesses testified on the defendant's behalf including a number of lawyers, business and community leaders, several family members, as well as one foster child, and the minister of the defendant's church. The testimony received in general indicated that Ralph Brubaker was active in community affairs and a good family man who went out of his way to care for elderly relatives and the many foster children he took into his home. The defendant's minister related that Brubaker was a licensed lay person authorized to serve communion at his Episcopal Church. Much of the testimony indicated that Brubaker was highly regarded by the professional and business community in Rock Island and had enjoyed a reputation of unquestioned honesty and integrity. Many of the witnesses expressed shock at hearing about Brubaker's crimes and stated that such acts seemed totally out of character. The sentencing judge in the state court proceeding sentenced the defendant to probation because he felt that a period of imprisonment would not be appropriate in the case.

At the district court hearing three witnesses appeared on Brubaker's behalf: David McAdam, the chief probation officer of the state judicial circuit, Jason Kimball, the Executive Director for the Foundation for Crippled Children where the defendant was performing community services work as part of his probation, and the defendant's wife, Pauline Brubaker. This testimony was in supplementation of the record of the testimony in the state court, a transcript of which was before the district court. Eleven letters were also submitted on the defendant's behalf from family members, friends and business associates of the defendant, as well as a letter from the state probation officer, and the Executive Director of the Foundation for Crippled Children.

In the district court, McAdam, the state probation officer, testified that the defend-

ant was given the highest score of 100 in his classification system used for purposes of determining what kind of supervision would be appropriate in the case of a particular probationer. The score of 100 showed that the defendant was an exceptional case needing only selective intervention due to his stable life, employment and community involvement, and indicated that the defendant was able to function on his own. According to the probation officer, such probationers are best allowed freedom to continue working with others.[3]

The prosecution, however, advanced a point of view on the appropriate sentence differing substantially from that presented on behalf of the defendant:

Whatever reputation Mr. Brubaker enjoyed for the 30 years that he was employed as a trust officer for The Rock Island Bank, for the last four years of those 30 years, he was a fraud. Beginning in 1975, as he plead guilty to in this court, Mr. Brubaker systematically pilfered the trust accounts and the state accounts of the sick, the infirm, the incompetent, and heirs of these people. It was not The Rock Island Bank that was the victim of these crimes, but people who were not in the position to defend themselves. This happened for four years without any apparent motive on the part of Mr. Brubaker. It involved serious breaches of trust for the bank. It involved in 1976 Mr. Brubaker evading payment of his income taxes. And as the Court is well aware, a large amount of the taxes that he attempted to evade were based on a lawfully received income source of some $25,000.

Your Honor, this evidence is to me an attitude on the part of Mr. Brubaker that relates to the most basic of faults of mankind—and that is greed—as the sole motivation for Mr. Brubaker's activity. He now stands convicted of four serious felonies.

The United States Government, your Honor, highly recommends that this court sentence the defendant to an extensive period of incarceration. It is very unfortunate that the people who will suffer the most for Mr. Brubaker's incarceration is not Mr. Brubaker but the people who have come to depend on him and trust him. That fact, your Honor, should not go to Mr. Brubaker's benefit but further to his condemnation.

The district court sentenced Brubaker to an extensive jail term, reasoning as follows:

Mr. Brubaker, any sentencing is a traumatic experience for a judge. It is far and away the hardest part of the work that a judge does, and that is particularly true when a man is involved who has earned the love and trust and respect of many responsible people. I couldn't take from you any part of love and respect that you have earned for your good works, and I don't mean to depreciate in any way the good works that you have performed over many years as well as under the order of the state court in the last year. Perhaps there is a reward for that in heaven, sir.

A judge, having taken an oath of office before God, must deal with the other side of this picture: The fact that over several years you have violated trusts and looted monies entrusted to your care by a good many good people, and the only excuse, you felt poorly compensated for your work in relationship to the work of others, is inexcusable. If each of us could make that decision, no order could exist at all in our society. You just pocketed other people's money apparently every opportunity where it appeared that it wouldn't be missed, without their knowledge, and while hiding behind, sir, a cloak of responsibility which was partly earned and partly the result of employment in a

---

**3.** In his letter to the U.S. Attorney prosecuting this case, McAdam described the financial counseling services and instruction that Brubaker was rendering to his clients as part of his community services work in connection with his probation. McAdam wrote "He's a very considerate and efficient man and an asset to the Probation Department." Similarly favorable reports were also received in letters from the Executive Director of the Crippled Children's Foundation and the Resource Coordinator of the Juvenile Court Services.

bank. I have no more right to pretend that that is not true or that it isn't important or that it can be excused or lightly punished than you had to embezzle the funds. The whole American financial fabric rests on the integrity of banks and bank people.

You knew the price of what you did all the way along. You knew what would and should happen if you got caught. Your consciously illegal action as a bank officer has brought you to this situation which I must deal with very severely, sir, in order to uphold the hands of all bank people who are honest and to provide a deterrent to any who might be otherwise inclined to act as you have acted. That must be, sir, almost without regard to the possible effect on your family and other innocent people. The Court does not accept responsibility for those effects. Those effects are the result, sir, of your acts.

## II.

The principal question presented on this appeal is whether the sentence imposed upon the defendant by the district court was an abuse of discretion.[4] It is

axiomatic that a wide discretion is vested in the trial court with regard to the imposition of a sentence within the statutory limits. *Woosley v. United States*, 478 F.2d 139, 150 (8th Cir. 1973). *See generally, Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). This court has recently reaffirmed the principle that the reviewing court has no power to change or reduce sentences imposed within the requisite legislative limits on the ground that the sentence was too severe unless the trial court failed to exercise any discretion at all in imposing the sentence. *United States v. Dawson*, 642 F.2d 1060, 1062 (7th Cir. 1981) citing *United States v. Main*, 598 F.2d 1086, 1094 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979) and *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

In the present case, the imposition of two consecutive five-year sentences on two counts of bank embezzlement (18 U.S.C. § 656) and a concurrent three-year sentence on one count of income tax evasion (26 U.S.C. § 7201), plus fines totalling $15,-000.00, was within the requisite statutory limits.[5] The defendant however argues that,

4. The defendant also claimed as grounds for reversal of the district court's sentencing decision that the district court showed prejudice toward the defendant and a pre-determined disposition toward imposing the maximum statutory term of imprisonment. Furthermore, the defendant claimed that the district court subjected the defendant to double jeopardy by imposing a severe penalty for the same acts of embezzlement tried and punished in the state court. The defendant's claim of prejudice on the part of the sentencing judge is based upon the mere fact that the judge refused the first proposed plea agreement. The considerations voiced by the district court, however, as underlying its rejection of that agreement—the restriction on its sentencing discretion and the court's desire to know more about the case— were reasonable considerations. *See United States v. Bean*, 564 F.2d 700, 703–04 (5th Cir. 1977). The district court's rejection of the first proposed plea agreement, therefore, was clearly a proper exercise of the court's discretion.

The defendant's claim of double jeopardy is patently frivolous for the simple reason that the state court proceeding only concerned the embezzlement of funds from the Winbigler es-

tate, which was not one of the subjects of the district court case.

5. 18 U.S.C. § 656 provides:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

26 U.S.C. § 7201 provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed

If the District Judge in our case had considered all the evidence given to him, which was the same evidence considered by the Chief Judge of the Fourteenth Judicial Circuit, 8½ months prior to the sentencing in this case, the District Judge should have allowed the request by defendant for probation or a suspended sentence.

The defendant does not specify what evidence the district court failed to consider. Indeed, the record does not support the defendant's allegation that the district court failed to consider all of the relevant circumstances before sentencing. At the time of the sentencing decision the district court judge stated that he had read the presentence report and the transcript of the defendant's state court sentencing hearing as well as the eleven letters submitted on the defendant's behalf. In addition, the district court judge allowed the defendant to present witnesses and heard statements of counsel. Nothing more was offered or made available to the district court for consideration and there is nothing of which we are aware that the district court overlooked in making its sentencing decision.

The defendant further contends that "the defendant received two maximum consecutive terms because of the type [of] offense he was charged with or because he was *charged* originally with twenty-two counts of the same offense involving transactions from the same bank."[6] Of course, the defendant is correct in maintaining that the district judge is required to consider more than simply the crime for which the defendant stands convicted in imposing a sentence, but it is patent from the transcript that the defendant in this case did receive considera-

tion as an individual, contrary to his contention. Unlike *United States v. McKinney*, 466 F.2d 1403 (6th Cir. 1972), cited by the defendant, there is no evidence that the district court adhered to a rigid sentencing policy with regard to crimes of this type.

Our reading of the transcript of the sentencing hearing shows that the district court brought to bear upon its sentencing decision certain considerations that were specifically tailored to this individual defendant. The sentencing judge expressly acknowledged the defendant's past good works and the love, trust, and respect earned by the defendant from many responsible people. These factors were apparently outweighed in the judge's view by the fact that over several years the defendant violated a high position of trust, that was partly earned and partly the result of his employment at the bank, to loot monies entrusted to his care by "a good many good people." The judge also noted that the defendant's only excuse was that he felt poorly compensated for his work in relation to his colleagues at the bank.

It is apparent that the district court gave decisive weight to the general deterrence value of a severe sentence in this case, where the court explained to the defendant that "your consciously illegal action as a bank officer has brought you to this situation which I must deal with very severely, sir, in order to uphold the hands of all bank people who are honest and to provide a deterrent to any who might be otherwise inclined to act as you have acted." Consideration of general deterrence is proper provided that it does not result in a mechanistic imposition of a sentence. *United States v. Miller*, 589 F.2d at 1138; *Unit-*

by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

6. The defendant apparently believes that it was improper for the district court to consider the fact that the defendant was charged originally with twenty-two counts of embezzlement. In sentencing determinations, however, the magnitude of the violation is properly considered,

*United States v. Miller*, 589 F.2d 1117, 1139 (1st Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979), as well as other offenses charged in dismissed counts of an indictment. *Billiteri v. United States*, 541 F.2d 938, 944 (2d Cir. 1976) citing *United States v. Needles*, 472 F.2d 652, 655 (2d Cir. 1973). The circuit court also considered seventeen additional charges in aggravation of the sentence apparently without objection from the defendant.

ed States v. Wardlaw, 576 F.2d 932 (1st Cir. 1978); United States v. Foss, 501 F.2d 522, 527 (1st Cir. 1974). No such mechanistic approach to sentencing is here in evidence because the court clearly considered other relevant factors in addition to the deterrent value of the sentence that was imposed, although we grant that deterrence was given great weight by the district court. Nonetheless, where there has been an individualized determination, it is proper for a sentencing court to place greater emphasis upon deterrence than other goals of criminal justice. See, United States v. Foss, 501 F.2d at 528. Moreover, it has been said that there is no constitutional principle that prefers rehabilitation over deterrence and retribution as a goal of sentencing. Fielding v. Le Fevre, 548 F.2d 1102, 1108 (2nd Cir. 1977).

■ Finally, the defendant strenuously argues that federal criminal justice does not require a severe sentence in this case in light of the circumstances and the background of the defendant. The defendant asserts at one point: "If ever a record was made in mitigation, our case has established such a record. The sentences imposed by a District Judge in this case are severe, far in excess of what is necessary to meet the ends of federal justice . . . ." We recently made clear in United States v. Main, 598 F.2d 1086, 1094 (7th Cir. 1979) that questions relating to the weight to be given to the various factors considered by the sentencing court are a matter for the sentencing côurt's discretion with which this court will not interfere. Thus our conclusion here is the same as in United States v. Dawson, 642 F.2d at 1063, that although we agree that the sentence in question appears to be on the harsh side, we decline evaluation of the severity of the sentence, which is particularly the situation in the present case in which we are unable to say that the district court acted in a fundamentally unfair manner in the exercise of its discretion, or that it failed to exercise any discretion at all.

Nor, we wish to make it clear, do we affirm in this case merely on the basis of a wooden deference to the fact that the sentence was within the statutory limits nor do we do so simply because the scope of our appellate review here is a narrow one. We are mindful that at least from the days of pickpockets plying their trade in crowds observing the hanging of apprehended pickpockets, historical evidence may have failed to provide a decisive answer as to the effectiveness of stringent punishment as a deterrent to similar conduct on the part of others. The defendant here argues in effect that the mere fact of exposed guilt to one in his position is Procrustean punishment indeed and that the mere possibility of criminal disrepute falling on one in a respected community position is more than sufficient to deter others. It may have done so in some instances, although it was insufficient in Brubaker's case. This, of course, is one of the principal difficulties in ever knowing what is really effective in deterring criminal conduct because those who have been tempted but have resisted that temptation are probably generally not inclined to engage in bruiting about the fact that they would have engaged in criminal conduct except for the fact that they didn't want to face the consequences whatever they might be, whether community disrepute or incarceration.

In considering the district court's emphasis on deterrence, we are also mindful of a somewhat widely held belief, not diminished by media references, that the person with influence, the prominent individual, or one who has engaged in white collar crime is let off with a slap on the wrist while those not in these, or similar, categories are meted out severe penalties. Aside from any policy aspect that justice should not only be even-handed, but appear to be so, we are unable to say that persons in the position of Brubaker who contemplated engaging in wrongful conduct might not refrain from doing so if they knew from the punishment imposed on others who had succumbed to temptation not only that they might forfeit civil respect but that they would also be likely to be sentenced to substantial imprisonment.

Accordingly, and for the reasons stated in this opinion, we hold that the district court did not abuse its discretion in sentencing the defendant and we affirm the judgment of the district court.

AFFIRMED.