**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edgar GOMEZ, Defendant-Appellant.**

No. 85–3200.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1986.

Decided July 24, 1986.

As Amended July 29, 1986.

Robert M. Courtney, Courtney, Pledl & Molter, Milwaukee, Wis., for defendant-appellant.

John A. Franke, Organized Crime & Racketeering Section, Milwaukee, Wis., for plaintiff-appellee.

Before WOOD, COFFEY and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Two issues are raised, both of which relate to the impact which the defendant's illegal alien status may have had on the sentence imposed. The first requires consideration of references made by the court and Assistant United States Attorney during sentencing to the defendant as an illegal alien from Colombia. It is claimed those references violated the defendant's due process and equal protection rights. The second claim is that the court in imposing sentence relied on unsubstantiated information about the defendant's illegal entry into the United States.

### Background

Edgar Gomez, the defendant, was indicted in March 1984 along with nine other persons for conspiracy to distribute a Schedule II controlled substance in violation of 21 U.S.C. § 846, and for related offenses. Gomez entered a plea of guilty to the conspiracy count in September 1985,[1] and the matter was referred to the probation office for presentence investigation. The extensive drug activities of Gomez need not be set forth here in detail for our purposes. When the report was completed it contained the government's explanation of the offense, and information provided by Gomez and his family.

At the sentencing hearing the government advised the court, among other things, of the great problem caused by aliens engaging in drug transactions and suggested that the sentence of Gomez be used to send a deterrence message to others.[2] When sentence was imposed, the tri-

---

1. The only other count in which Gomez was named was then dismissed.

2. The part of the government's argument in full about which Gomez complains follows:
I think the citizens of this country have the right to feel betrayed that by virtue of an immigration policy that is relatively liberal, and permits people to come to this country to enjoy primarily the economic benefits that is offered, to have people come to this country even if intending to avail themselves of the legitimate economic benefits, turn to an endeavor which victimizes so many people in this country, solely for the reason that they will be able to benefit a great deal. I certainly do not mean to suggest that Mr.

Gomez or people similarly situated be treated more harshly solely because of their nationality or alien status, that would be obviously unconstitutional, but I do suggest that this situation has reached a point where severe punishment is warranted as a means to deterrence.... I can't say that I am a great believer in the fact that this message will get to people in Miami who have recently arrived there from various countries or the Colombia countries which they have come from but the fact is that I believe that unless and until the risks of this type of activity are made very great, that we will continue to have this problem because of the economic motivations of those coming to this country, their

al judge took note that Gomez was an illegal alien from South America who like some other aliens was engaging in drug trafficking, adding that the sentence of fifteen years imprisonment was intended as a deterrent to others.[3] Gomez seeks remand for resentencing.

### Analysis

 It is clear that both the government and the sentencing judge noted Gomez's status as an illegal alien from a Latin American country with an illegal drug reputation. If misused those considerations could violate the constitutional protections to which aliens, including illegal aliens, are entitled under the Fifth and Fourteenth Amendments. An illegal alien comes within the scope of the word "person" guaranteed due process under the Fifth and Fourteenth Amendments. The class of persons, including illegal aliens, which also may avail itself of the equal protection guarantee is coextensive with that class entitled to due process. *Plyler v. Doe*, 457 U.S. 202, 210–16, 102 S.Ct. 2382, 2391–94, 72 L.Ed.2d 786 (1982).

 That constitutional respect for all persons within the territorial jurisdiction is without regard to any differences of race, of color, or of nationality, *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886). That does not mean, however, that the court for sentencing purposes after the defendant has entered a plea of guilty to a drug violation may not properly take note of the defendant's illegal alien status from a country with a known reputation for illegal drug activity.

At the sentencing hearing the government showed acute awareness of the distinction between what was appropriate and what was not. The government specifically disavowed any suggestion that the defendant or others similarly situated be treated more harshly solely because of their nationality or alien status. That obviously would be unconstitutional. The defendant objects to what the government labeled a "disturbing trend" in drug cases in that drug cases frequently involve recent immigrants of Cuban and Colombian origin. That does in fact appear to be a disturbing problem publically recognized, disturbing not just to prosecutors, but to courts and to citizens generally.

Nor need the sentencing judge shut his eyes to the reality of the factual situation before him and pretend that the defendant is not an illegal alien from Colombia who has pleaded guilty to a drug violation. There can be no dispute but that the sentencing judge has wide discretion in considering all reliable and pertinent information which might reasonably bear on the sentencing decision. *Wasman v. United States*, 468 U.S. 559, 563–64, 104 S.Ct. 3217, 3220–21, 82 L.Ed.2d 424 (1984). That

---

inability to realize their expectations and the fact that they can turn to this type of activity so easily.

**3.** The trial judge's sentencing comments which give rise to the objections follow:

You stand before me today in this country as an unregistered alien. You, from all appearances, entered into this in a deliberate, calculated, intentional involvement in one of the most despicable businesses we have in our society. Unlike most aliens, you did not come to this country fleeing poverty and apparently you did not come fleeing any governmental suppression. You pretend to be a family person who put your family first, but you showed a total disregard for young people throughout this country who are most prone to becoming addicted to this type of product. It's difficult for me to understand how a person here as an unregistered alien would travel this country from one coast to the other when many hardworking people in

this country can't even afford to leave the State of Wisconsin. This Court is greatly disturbed by the increased numbers of people from Latin countries who take it upon themselves to bring that illicit product into this District. This District and the people who reside here cannot and will not tolerate it. It is unfortunate that you have to be the individual whom this Court has to sentence under these circumstances, but with the resources of this country pointed toward stopping the flow of this drug into this country, the least that this Court can do is impose a sentence which hopefully will serve as a deterrent to others who might follow in your footsteps. Therefore it is the judgment of this Court that you, Edgar Gomez, be committed to the custody of the Attorney General of the United States or his authorized representative, for imprisonment for a term of fifteen years.

wide discretion will not be disturbed in the absence of gross abuse. *United States v. Wilkins,* 659 F.2d 769, 773 (7th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981). The sentencing considerations of a trial judge may be broad in scope and largely unlimited either as to the kind of information considered or the source from which it comes, *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), but the sentence cannot be based upon "misinformation of constitutional magnitude." 404 U.S. at 447, 92 S.Ct. at 592. The information about Gomez was not disputed as erroneous. In Colombia, Gomez, a college graduate and the son of a clinical psychologist, was not impoverished but a member of the middle class. He was admittedly an illegal alien from Colombia found guilty of a drug violation. Gomez himself explained in his version of the offense in the presentence report that when he resided in Colombia he resisted the temptation of distributing drugs even though he described the rewards of drug dealing as very luring in view of many rags-to-riches Colombian friends who owed it all to drug trafficking. After he migrated to this country, Gomez explains he turned to drugs to support his family and to get his finances in order. According to Gomez it got out of control when he was robbed of two kilos of cocaine he was delivering to Chicago. He was then unable to pay his own source and consequently his son was kidnapped and held for $180,000 ransom, which he paid. His involvement in the drug trade increased until his arrest.

Faced with the responsibility of sentencing Gomez, the judge could not, and would have been remiss if he did, ignore the realities of the case. He denounced drug trafficking as "despicable business," as do we. He noted that Gomez came here illegally and not to escape governmental suppression or poverty. The judge expressed concern as well as the concerns of the people of the district about the increasing numbers of people from Latin countries bringing illegal drugs into the district. He expressed the hope that the sentence imposed would serve as a deterrent to others who might contemplate following in the footsteps of Gomez. In our view the court's explanation of his sentence, far from being a constitutional violation, was well stated.

The nationality of Gomez, and his illegal entry and entrance into the illicit drug business, are too related to be artificially separated for sentencing purposes. Gomez admitted in open court that his entry into this country had been illegal. That illegal act is no different than any other recent prior illegal act of any defendant being sentenced for any offense. It need not be an offense for which the defendant was previously convicted, *United States v. Jones,* 696 F.2d 479, 493 (7th Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983), but even so the defendant in this case admitted his illegal entry. The matter of aliens illegally entering this country for one reason or another sometimes raises emotional issues, but the illegal act of an alien is entitled to no more deference than some other prior illegal act of a citizen also being sentenced for a drug violation.

■ Nor is the sentencing judge constitutionally required to ignore the identity of the countries which are recognized as often the source of the narcotic problems of this country and from which drug traffickers immigrate to this country. It is within the court's prerogative to send a message, a strong one if need be, in the hope that the sentence may serve as a deterrent. Deterrence as a sentencing factor, so long as it is not mechanistic and so long as there has been an individualized determination of the sentence, is appropriate. *United States v. Brubaker,* 663 F.2d 764, 770 (7th Cir.1981). *Brubaker* was not violated by the sentencing considerations in this case. As the government on appeal points out, the court's concern was not ethnic, but geographic, geographic because Colombia has the reputation of being narcotically troublesome. The flow of drugs from certain Latin countries along with the flow of peo-

ple from those countries constitutes a part of the narcotics problem to be dealt with, not just by the Coast Guard, Customs and Immigration authorities, but by prosecutors and courts as well. Law-abiding citizens from Colombia are welcome, but those who are not law-abiding may expect to be treated accordingly, but constitutionally.

Gomez also objects to the court's notice that he "apparently" came to this country not to flee poverty or suppression. Gomez does not claim that the judge's observations are contrary to the record, and cannot, since they flow logically and directly from the information contained in the presentence report supplied by Gomez and his family. He failed to offer any explanation or other reason for coming to this country illegally or state what his employment was here other than the illegal drug business. Somehow he managed to maintain himself and his family in a seven-room single family dwelling rented for $800 per month in a middle class Miami suburb. Gomez and his counsel had ample opportunity at the sentencing hearing to voice any objections or corrections to any information in the presentence report or mentioned by the judge, but neither did although both addressed the court.

Gomez also complains that the judge suggested that he came to this country to deliberately enter into the drug business. Exactly why he came or when he entered into the illegal drug business has not been determined in the record, and the judge did not undertake to resolve the issue even though it could easily be inferred. The judge's comments relate to Gomez's deliberate and intentional involvement in the drug conspiracy with which he was charged.

We not only find no sentencing error, but we join the trial court in the effort to deter similar future activity not only by aliens, illegal or otherwise, and from whatever country, but by our own native-born citizens as well.