**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Argemiro MUNOZ, a/k/a Miro,
Defendant–Appellant.
(Two Cases)**

**Nos. 90–7375, 92–6195.**

United States Court of Appeals,
Fourth Circuit.

Argued July 8, 1992.

Decided Aug. 31, 1992.

**494**

Thomas Ross Haggard, University of South Carolina Law Center, Columbia, S.C., argued, for defendant-appellant.

Max Oliver Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., argued (Thomas J. Ashcraft, U.S. Atty., Charlotte, N.C., on brief), for plaintiff-appellee.

Before WILKINSON, NIEMEYER, and HAMILTON, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

Argemiro Munoz, a Colombian national, was charged in a 21–count indictment with violations of various drug laws and, after the commencement of his criminal trial, entered a nolo contendere plea to the nine counts against him. The counts to which he pled alleged Munoz's participation from 1980 to 1983 in conspiracies to distribute approximately 30 kilograms of cocaine and 1,000 pounds of marijuana in North Carolina. Munoz apparently came to the United States from Colombia, South America, at the behest of a co-conspirator and became involved in a drug distribution organization in Miami supplied with drugs from Colombia. He was sentenced to 35 years imprisonment, which was later reduced to 30 years.

At the sentencing hearing, the district judge stated:

It really is to me revolting to see you people come up here from South America, take advantage of our system, take advantage of the wealth, the work and good people of this country and bring in these drugs literally by the ton. You care nothing about this country.

When queried by the Assistant United States Attorney about his reference to "tons of cocaine," the judge explained:

I'm speaking in general, people in Miami and those areas are just bringing this stuff in here so there's no way you're going to stop it. I would not—I want the record to show I was not charging Mr. Munoz with tons of cocaine or tons of marijuana or anything else. I'm talking about the people who deal in these drugs down in Florida from these South American States.

Munoz brought this case under 28 U.S.C. § 2255, requesting that his sentence be vacated and that he be resentenced by a different judge. He contends that the sentencing judge's remarks reveal an improper bias against him based on his Colombian nationality and that he was denied the right to effective assistance of counsel because counsel failed to move to have the sentencing judge recuse himself. These issues turn on whether the sentence was founded upon improper considerations that violate due process.

■ Broad discretion is given to sentencing courts to consider a wide range of information concerning the background, character, and conduct of defendants.* *See* 18 U.S.C. § 3661 (§ 3577 at the time of sentencing in 1986); *Wasman v. United States*, 468 U.S. 559, 563, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984) (observing that sentencing courts may consider "any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed"). But we have recognized that sentences imposed on the basis of race or national origin violate due process. *See United States v. Bakker*, 925 F.2d 728, 740 (4th Cir.1991)

(dictum); *see also United States v. Borrero–Isaza*, 887 F.2d 1349 (9th Cir.1989); *United States v. Gomez*, 797 F.2d 417 (7th Cir.1986). Generally, there is no proper place for a comment or observation by a sentencing judge during sentencing that alludes to the national origin of the defendant as a basis of sentencing. *See United States v. Salama*, 974 F.2d 520 (4th Cir. 1992). Indeed, such extraneous observations run counter to fundamental constitutional principles against basing punishment on a defendant's national origin.

■ While a defendant's nationality cannot form the basis of punishment, a sentencing court may indicate the community's outrage at the defendant's conduct as well as at its larger context, for instance by decrying the source of the drugs involved in a defendant's offense and the distributing organizations at locations in other countries. The court may also impose a sentence to deter similar criminal conduct by others, *see United States v. Moore*, 599 F.2d 310, 315 (9th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); *cf.* 18 U.S.C. § 3553(a) (requiring consideration of deterrence), and so may refer to those, as a group, whom the court seeks to deter. In doing so, the court may appropriately take judicial notice of the fact that South America, in general, and Colombia, in particular, are major sources of the cocaine sold and used in the United States. As the court in *Gomez* stated:

[T]he sentencing judge [is not] constitutionally required to ignore the identity of the countries which are recognized as often the source of the narcotic problems of this country and from which drug traffickers immigrate to this country. It is within the court's prerogative to send a message, a strong one if need be, in the hope that the sentence may serve as a deterrent.

*Gomez*, 797 F.2d at 420. *See also Borrero–Isaza*, 887 F.2d at 1355–56 (under-

---

* Since Munoz's crimes were committed before November 1, 1987, the United States Sentencing Guidelines do not apply to this case.

standing *Gomez* to allow comments to deter Colombians from importing drugs from Colombia based on the conclusion that the defendant had done so). While a sentencing court's comments may be directed to cohorts of the defendant or others likely to be involved in similar illegal conduct, even if the source or location of the activity is stated to be in another country, the connection between the group targeted for deterrence and the defendant must be the criminal conduct *and not* the defendant's national origin.

■ The defendant's Colombian origins do not alone justify linking him with drugs from Colombia or drug distribution organizations based in Colombia. Nor do they, without more, justify any punishment or enhancement of punishment. Consequently, to determine whether the sentencing judge's comments reflected improper consideration of national origin, we must evaluate the stated purpose of his remarks to see whether they express a purpose to deter illegal drug distribution, or vindicate the community's outrage by placing Munoz's conduct in its context of large-scale importation of illegal drugs from Colombia and by organizations in Colombia, and to ensure that the judge did not refer to Colombia merely because the defendant, who happens to have been convicted of a drug offense, is Colombian.

Considering the record in this case as a whole, we are not "left with the apprehension that [Munoz's sentence] may have reflected" consideration of his Colombian nationality rather than his conduct as a drug trafficker. *See Bakker,* 925 F.2d at 740–41. It is true that the judge's initial comments could be understood to single out potential offenders who, like Munoz, came to this country from South America. These comments were unfortunate and, standing alone, might support a charge of bias. A fair reading of the entire transcript from the proceeding below, however, leads us to conclude that the court's comments were directed at *drug traffickers* from Colombia and Florida, and not Colombians or South Americans, generally. After his initial comments, the judge expressed the community's frustration with its inability to stop the trade in illegal drugs: "I'm speaking in general, people in Miami and those areas are just bringing the stuff in here so there's no way you're going to stop it." The judge further clarified the focus of his remarks, in concluding: "I'm talking about the people *who deal in these drugs* down in Florida from these South American States." (Emphasis added.) Thus, we are satisfied that the sentence in this case did not improperly reflect consideration of Munoz's national origin.

Finding no fatal impropriety in the sentencing of Munoz and for that reason rejecting Munoz's claims of judicial bias and ineffective assistance of counsel, we affirm the judgment of the district court.

AFFIRMED.