**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Armelio De La CRUZ, Defendant–Appellant.**

No. 87–2763.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1988.
Decided Feb. 28, 1989.

Peter J. Heflin, Hausmann, McNally & Hupy, S.C., Milwaukee, Wis., for defendant-appellant.

R. Jeffrey Wagner, Asst. U.S. Atty., Patricia J. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Prior to his conviction, the defendant, Armelio De La Cruz, resided in this country as a conditional entrant, having arrived by boat after his exile from Cuba. On August 20, 1985, he was indicted in the Eastern District of Wisconsin for possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was released from custody after posting a $50,000 bond on August 28, 1985. Further

prosecution of the defendant was delayed by his failure to appear at a September 11, 1985, hearing to review his bail. De La Cruz was arrested over a year later in New York on December 18, 1986. On July 15, 1987, he entered a guilty plea to the crime charged in the indictment and was sentenced to fifteen years' imprisonment on October 19, 1987, the maximum prison term allowed under the statute, to run consecutively with his sentence of eighteen months' imprisonment for failure to appear.[1] On appeal, defendant contests the validity of his sentence, alleging that the district judge improperly considered the defendant's nationality and method of entrance into this country.

The defendant's road to appeal has been peppered by his counsel's repeated attempts to withdraw from representing De La Cruz on appeal. Defendant retained attorney Michael F. Hupy of the Milwaukee bar for representation in the district court. Following the filing of defendant's appeal on October 28, 1987, Hupy moved to withdraw on November 4, 1987. On November 5, 1987, the district court ordered Hupy to assist the defendant in the preparation of a motion *in forma pauperis* and allowed the attorney to withdraw from representation of defendant on November 17, 1987. This Court vacated the order allowing Hupy to withdraw in light of *United States v. Flowers*, 789 F.2d 569 (7th Cir.1986), which held that the court of appeals, not the district court, is the proper forum for determining whether appointed counsel may withdraw from representing a defendant on appeal.

On January 15, 1988, defendant's counsel asked this Court for permission to withdraw. His motion was denied on February 2, 1988, and his motion for rehearing *en banc* was denied on May 16, 1988. On June 2, 1988, this Court also denied Hupy's request to stay proceedings on defendant's appeal while the attorney filed and awaited the disposition of his petition for a writ of certiorari to the Supreme Court. Hupy attempts to renew his challenge to serving as appointed counsel for defendant on appeal by attacking the constitutionality of Seventh Circuit Rule 4 under which counsel was required to continue his representation of the defendant on appeal. Indeed that is the principal issue raised on appeal.[2]

## I. Validity of Appointment of Defendant's Appellate Counsel

It is unfortunate that defendant's counsel on appeal devotes only six pages of the defendant's briefs to discussion of De La Cruz's challenge to the sentence, usurping the remaining nine pages for counsel's challenge to Circuit Rule 4 [3] under which he was appointed. Counsel subordinates the interests of his client to his own interest by boot-strapping to defendant's briefs Hupy's challenge to Circuit Rule 4 requiring him to serve as defendant's counsel on appeal. Counsel's argument has been thrice rejected by this Court through denial of his motion to withdraw as counsel on appeal, his motion to rehear *en banc,* and his motion for a stay. Through De La Cruz's appeal, his counsel reiterates his argument that Circuit Rule 4 violates the

1. De La Cruz has not appealed from his conviction and sentencing for failure to appear. Case No. 87–Cr–28 (E.D.Wis.).

2. See defendant's appellate brief at 3–8 and reply brief at 1 and the lengthy Appendix to his main brief on appeal.

3. Circuit Rule 4 provides:
   Trial counsel in a criminal case, whether retained or appointed by the district court, is responsible for appeal until specifically relieved by the court of appeals upon a motion to withdraw for good cause. If trial counsel was appointed by the district court and a notice of appeal has been filed, trial counsel will be appointed as appellate counsel without further proof of the client's indigency. If the client was not found to be eligible for Crimi-

nal Justice Act representation in the district court but appears to qualify on appeal, trial counsel must immediately assist the client in filing a motion to proceed as an indigent with the district court. If the motion to proceed as an indigent is granted, the court of appeals will appoint trial counsel as appellate counsel unless the district court informs the court of appeals that new counsel should be appointed. If the motion is denied by the district court, trial counsel may file a similar motion in the court of appeals. Any motion to withdraw for good cause must be filed in the court of appeals within 10 days of the notice of appeal. The court of appeals will make all appellate appointments.

Fifth Amendment's due process clause and the Thirteenth Amendment's prohibition of involuntary servitude by requiring him against his will to represent an indigent defendant at an unfair level of compensation. Counsel feebly attempts to implicate the interests of his client by arguing that under Circuit Rule 4 defendants such as his client will no longer be able to secure competent counsel in the trial court if such counsel is required to continue through representation upon appeal for a purportedly inadequate level of compensation.

■ Counsel's attempt to invoke the nebulous interest of his client and others similarly situated does not prevent this Court from appreciating counsel's argument for what it is: a complaint that he is not being adequately paid under the Criminal Justice Act (18 U.S.C. § 3006A) for representing an indigent defendant. This argument is easily answered. It is axiomatic that in return for membership in the professional bar, an attorney must accept court appointments to represent an indigent like De La Cruz in order to preserve his Sixth Amendment right to counsel. Compensation is not required under this constitutional mandate. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

Counsel's additional claim that his continued representation on appeal forces him to violate Rule 1.2 of the American Bar Association Model Rules of Professional Conduct is untenable.[4] Hupy asserts that he and the defendant entered into an employment agreement prior to defendant's trial under which Hupy agreed to represent defendant in the trial court, specifically excluding representation upon appeal. Counsel contends that Rule 1.2 prevents him from representing a client in a matter for which the client expressly agreed in writing not to be represented by this counsel on appeal. It is worth noting that De La Cruz has not objected to his representation by Hupy on appeal nor attacked his representation as ineffective.

■ We need not, however, address Hupy's arguments further because this Court lacks jurisdiction to review his challenge to Circuit Rule 4 since counsel's challenge has already been adjudicated here. Counsel is not a party to this appeal. One who is not a party to the record and judgment is not entitled to appeal therefrom. *Rogers and Rogers v. National Union Fire Insurance Company,* 864 F.2d 557, 559–560 (7th Cir.1988); *Akins v. Board of Governors,* 840 F.2d 1371, 1372 (7th Cir. 1989). Despite the attempts of counsel to cloak his challenge to Circuit Rule 4 in the interest of his client, the conclusion is inescapable that it is Attorney Hupy who is purportedly harmed by Circuit Rule 4, not De La Cruz.

Hupy's motion for reconsideration *en banc* was denied by this Court. This Court will not consider for a third time Hupy's request to withdraw through his client's present appeal. Hupy's remedy was to seek Supreme Court review of this Court's denial of his motion to withdraw, rather than attempting to consolidate his appeal

---

4. Rule 1.2 provides:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decisions whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive a jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views of activities.

(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

(e) When a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

with that of his client. In contrast to *United States v. Wilkins*, 659 F.2d 769, 771 n. 1 (7th Cir.), certiorari denied, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981), where we postponed ruling on counsel's motions to withdraw and responding to client's letters requesting appointment of new counsel until the client's case was considered, this Court has already disposed of the attorney's motion to withdraw. Hupy has exhausted his avenues for review in this Court rendering his present challenge nonjusticiable. Indeed, counsel recognized the correct procedural route when he filed a motion for a stay of this Court's proceedings pending the filing and disposition of a petition for a writ of certiorari by the Supreme Court. That motion was denied by this Court on June 2, 1988. The matter was closed then and will not be reopened now.

## II. Validity of Evidence

At the time of defendant's sentencing, a conviction under 21 U.S.C. § 841(a)(1) carried a maximum penalty of fifteen years' imprisonment, a $125,000 fine, and a three-year special parole term. Judge Warren imposed the maximum prison sentence in spite of the fact that the government recommended ten years' imprisonment in return for defendant's guilty plea.

Defendant contends that the district judge took into consideration improper factors in his sentencing determination.[5] Specifically, defendant points to the remarks of Judge Warren regarding the defendant's status as a Cuban "boat person" contained in his presentencing comments:

> No. 1, I am inclined to agree with the government that we know a lot more about Mr. De La Cruz now than we did the first time he was through court, and it doesn't make him shine any brighter as a sterling citizen.

> No. 2, I am inclined to look askance at anybody that came over on the boat lift. I am of the opinion, frankly, that Castro cleaned out his prisons when he gave us all those lovely citizens, and we have

been handling them through the courts ever since.

> No. 3, I would concur with defense counsel, that there are no real crimes of violence in that record, but there is plenty of indication that he was capable of violence. You have got the carrying of the concealed weapon case * * *.

> * * * I think that you were and are a large-scale cocaine trafficker and were associated with Mario Stein and with the Estevez organization. As far as I am concerned, when that occurs, and I have got a big time with cocaine * * *.

> * * * He was on the lamb [sic], all of which leads me to think that when I couple that with the declaration that we are getting from Congress and my complete distaste for the boat lift people, and the fact that he just hasn't been a decent citizen since he came to this country, it is the judgment of the court and the sentence of the law that you * * * be committed to the custody of the Attorney General * * * for a period of 15 years.

October 19, 1987, Tr. at 12–17 (Defendant's App. A22–A26).

The precedents in this Circuit establish that under limited circumstances, it is proper to pursue the goal of general deterrence in sentencing, provided this goal is tempered by consideration of the defendant's individual characteristics to prevent mechanistic imposition of sentences. This principle was apparently first articulated by this Court in *United States v. Brubaker*, 663 F.2d 764 (7th Cir.1981). There the defendant had been convicted of two counts of embezzlement and one count of income tax evasion and received the maximum sentence of five years' imprisonment on each of the embezzlement counts, to run consecutively, and three years' imprisonment for the income tax evasion count, to run concurrently. Additionally, the defendant was fined $5,000 on each count. The defendant had no criminal record prior to the series of embezzlements he committed between 1975 and 1979 and was well respected in his community for his acts of charity and integrity. Nonetheless, the tri-

---

**5.** This was the only point orally argued by a    representative of Hupy's firm.

al judge imposed the maximum sentence allowed in order to "provide a deterrent to any who might be otherwise inclined to act as you have acted." This Court affirmed the district judge's approach to sentencing since he gave consideration to the individual characteristics of the defendant as well as the goal of general deterrence.

Within this goal of general deterrence, we have allowed the sentencing judge to take into consideration the defendant's relationship with a country known for its criminal activity. In *United States v. Gomez*, 797 F.2d 417 (7th Cir.1986), the Court affirmed the district court's recognition of the defendant's status as an illegal alien from Colombia in sentencing him for a drug-trafficking crime, so long as such sentencing was not "mechanistic". "The nationality of Gomez, and his illegal entry and entrance into the illicit drug business, are too related to be artificially separated for sentencing purposes. * * * Nor is the sentencing judge constitutionally required to ignore the identity of the countries which are recognized as often the source of the narcotic problems of this country and from which drug traffickers immigrate to this country. It is within the court's prerogative to send a message, a strong one if need be, in the hope that the sentence may serve as a deterrent. * * * As the government on appeal points out, the court's concern was not ethnic, but geographic, geographic because Colombia has the reputation of being narcotically troublesome." *Gomez*, 797 F.2d at 420.

In *United States v. Torres*, 733 F.2d 449 (7th Cir.1984), we affirmed the district court's sentencing consideration of the fact that defendants were residents of an Indian reservation which had been the site of several unrelated violent crimes immediately preceding their convictions. "The trial judge's reference to other crimes committed on the Menominee Indian Reservation and his comment that 'I think it's imperative that a message go forth to the Menominee Nation,' was well within the judge's discretion to consider general deterrence when imposing sentence." *Torres*, 733 F.2d at 462. See also *United States v. Malik*, 680 F.2d 1162, 1165 (7th Cir.1982),

where this Court affirmed the sentence imposed by the district court on defendants from the Middle East where the district judge stated: " 'I think prison sentences, in many cases, might send a message, and I think we should send a message to the people in the Mideast that if they come to the United States and they engage in this kind of conduct [heroin importation], they are going to be severely punished.' "

A trial judge has wide discretion in sentencing which will not be disturbed by this Court absent a gross abuse of discretion. *United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir.1981), certiorari denied, 454 U.S. 1102, 102 S.Ct. 681. In imposing a sentence, the trial judge may conduct an inquiry broad in scope and largely unlimited as to the kind of information the court may consider, provided that information is not improper or inaccurate. *United States v. Washington*, 586 F.2d 1147 (7th Cir. 1978). This axiom of appellate review applies with great force where, as in this case, the sentence imposed is within the statutory limits. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592; *United States v. Carter*, 720 F.2d 941, 951 (7th Cir.1983). However, the trial judge's discretion is, of course, circumscribed by the constitutional rights of the defendant. "There can be no doubt that the constitution continues to operate, even after a valid conviction, in the sentencing process." *United States v. Lemon*, 723 F.2d 922, 937 (D.C.Cir.1983). See, *e.g.*, *United States v. Maples*, 501 F.2d 985 (4th Cir.1974), where female sex of defendant was an impermissible factor for imposing lighter sentence than that of male co-defendant.

The defendant points to *United States v. Diamond*, 561 F.2d 557 (4th Cir.1977), as authority for vacating his sentence as based on impermissible factors. In *Diamond*, the trial judge for the Eastern District of Virginia took into consideration that defendants were New York State residents and committed the crime of which they were convicted in Virginia. "[T]he Court takes a dim view of people coming down from New York to commit their

crimes in Virginia. Now, I suppose that that is grounds for appeal, but I will state it right for the record. If they want to live and have their being in the State of New York, then let them have their source of a livelihood in the State of New York. If that livelihood is crime, then commit it up there * * *." *Diamond*, 561 F.2d at 559. The court of appeals vacated the sentences in light of the district judge's statements regarding the defendants' nonresident status. "We cannot permit a district judge who is an officer of a national judicial system and who is enforcing a national criminal code to be moved by such considerations of parochialism in imposing sentences." *Diamond*, 561 F.2d at 559.

A similar challenge to the one before this Court was brought in *United States v. Lemon, supra,* where the trial judge was presented with evidence of the defendant's membership in a group known as the Black Hebrews during the investigation prior to sentencing. The Black Hebrews were described by the government as a sect which "purports to be a religious organization or a quasi-religious organization, the belief being that its members are descendants * * * from one of the original tribes of Israel, and there is a community living in Israel at this moment." *Lemon,* 723 F.2d at 924. The government attempted to demonstrate that the defendant committed the charged crime as part of a pattern of economic crimes perpetrated by the Black Hebrews in order to fund their "repatriation" to Israel. The court of appeals held that the First Amendment prevented the sentencing judge from considering the defendant's membership in the Black Hebrews as an aggravating factor in sentencing, unless the defendant intended to further the organization's illegal activities. *Lemon,* 723 F.2d at 940. "These [cited] cases leave no doubt that the first amendment proscribes punishment of an individual for membership in a protected organization unless the organization has illegal aims and the individual intends to further those aims." *Lemon,* 723 F.2d at 939–940.

Examination of Judge Warren's statements reveals that in sentencing De La Cruz, the judge was clearly motivated by what he perceived as a Congressional mandate to impose harsher sentences on defendants convicted of drug-trafficking charges for the purpose of general deterrence. In his remarks prior to sentencing the judge explained his motivation behind imposing a maximum sentence: " * * * Congress had told us very clearly that it wants tougher penalties on drug cases, * * * by the passage of the [Anti–Drug Abuse] act that it passed last year [1986]." October 19, 1987, Tr. at 13 (Defendant's App. A22). He also took into consideration individual factors including the defendant's association with "big time" drug dealers, his prior criminal record including possession of a concealed weapon and the fact that De La Cruz was "on the lamb [sic]" (referring to the defendant's failure to appear at a hearing following his release on bond). Within this framework of general deterrence balanced with individual characteristics of the defendant's background, Judge Warren made note of the fact that the defendant arrived in the United States from Cuba as one of the Mariel boat-lift people.

The issue of the defendant's nationality was initially raised by De La Cruz's counsel in his remarks before the judge prior to imposition of the sentence: "I will point out to the Court that Mr. De La Cruz is in his mid-thirties. He hasn't necessarily had an easy life. He comes from Cuba. He was a political prisoner in jail in Cuba for some years." October 19, 1987, Tr. at 9.

The government countered the remarks of the defense counsel, indicating that the defendant had been in business with prominent cocaine dealers from Cuba. "This defendant was unquestionably a large-scale drug dealer. He was, in many respects, the first large-scale Marielito Cuban drug-trafficker to be operating in our community. He was connected with Mario Stein who is facing sentencing before this Court. He was connected with an individual named Manuel Guerra, who is serving a ten-year prison sentence after being convicted in connection with the Estevez drug organization." *Idem* at 11.

■ In such a setting Judge Warren did not rely on improper information in sentencing De La Cruz. In his remarks following the defense counsel and government's statements, the judge made it clear that he did not accept the defense counsel's characterization of De La Cruz as a political prisoner from Cuba, but regarded him as a "big-time" drug dealer who had been involved with other prominent convicted Cuban drug traffickers. His remarks make clear that he intended to send a deterrent message to other drug traffickers similarly situated to the defendant. As discussed above, this was within his discretion.

In affirming the sentencing process of the trial judge, we emphasize that there is a very fine line of demarcation separating presentencing statements regarding a defendant's relationship with a country or its residents who have engaged in similar criminal activity there and statements concerning the race or national origin of the defendant which would violate his due process guarantees. Although the statements made by Judge Warren were not prejudicial since they were made within the appropriate context of general deterrence, his statements did approach the zone of unconstitutionality.

Even if we were to assume that Judge Warren's remarks were improper, it is clear that there was a sufficient amount of other aggravating factors which warranted the imposition of the maximum prison sentence. The judge was clearly persuaded by the defendant's failure to appear on bond, a pending case charging him with possession of a concealed weapon, and his admitted association with other significant drug dealers. Although one of the judge's statements might, standing alone, have been an improper reason for sentencing a defendant, where other justifiable considerations underlie the sentencing decision, this Court will not disturb the sentence. *United States v. Bailey,* 734 F.2d 296, 305 (7th Cir.), certiorari denied, 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 263 (1984).

For the foregoing reasons, we hold that the sentencing procedure was not improper and affirm the judgment below.