62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph AUTULLO, Defendant-Appellant.
 No. 95-1020.
 United States Court of Appeals, Seventh Circuit.
 Argued June 14, 1995.
Decided July 12, 1995.
 
 Before Coffey, Manion and Kanne, Circuit Judges.
 
 ORDER
 
 1
 On December 1, 1988, a federal grand jury returned a forty-nine count indictment charging Joseph Autullo and twenty-one others with multiple drug related offenses based upon their participation in a large-scale cocaine distribution network.[1] Autullo fled after the indictment was returned and remained a fugitive from December 1, 1988 until April 1993 when he was arrested in Anchorage, Alaska. On September 20, 1994, Autullo pled guilty to a superseding information charging him with one count of possessing cocaine with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and three counts of causing individuals to travel in interstate in furtherance of a cocaine distribution business in violation of 18 U.S.C. Secs. 1952 and 2. The convictions related to acts committed prior to the passage of the Federal Sentencing Guidelines.
 
 
 2
 On December 8, 1994, Autullo was sentenced to a prison term of eighteen years and fined $10,000. The sentencing judge was Judge Kocoras who had presided over the jury trials in two related cases and had imposed sentence upon Autullo's brother for his involvement in the drug conspiracy.[2] Judge Kocoras stated at sentencing:
 
 
 3
 There is also not much question that Dante's connection with Joseph and his purchases from Joseph resulted in a substantial ultimate distribution of drugs in the Chicago area. And I will tell you this maybe as a personal matter, and it is manifested in Mr. Autullo.
 
 
 4
 I have been a judge for a little over fourteen years now and of all of the cases that have come before me, I probably have not been as affected by any of them as much as this one for this reason: Mr. Autullo is a little older than some of the others who appeared before me; but, what we had was a series of young people whose lives were materially affected, either by the use of drugs or the sale and possession of drugs, or usually some combination of both. Not only were the users ultimately affected in deleterious ways, but probably more significantly, those [who] were involved in distributing the drugs were affected. Most who were caught wound up with prison terms, some of some length. And if someone who looks at this case is not moved by the profound sadness in understanding that a significant amount of young youthful vigorous life is forfeited to a penal institution and is not overwhelmingly saddened by that, I do not know what else would move the human spirit to leap over the circumstance and that human frailty. (12/8/94 Sentencing Transcript at 21-22) (emphasis added)
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 I think, it is very difficult for people to fully acknowledge and comprehend the entirety of their criminal conduct and bone [sic] up to it. And I do not think that Mr. Autullo has done that. And I think that there are obvious human reasons why people do not do that. But I do not think that necessarily computes to the fact that he has not undergone some serious soul searching in prison. I actually think he has.
 
 
 8
 Now whether that will continue or not, I really do not know.... So, I do think that [there] has been some change, and I think some change for the better and I think that it is appropriate for me to recognize that.
 
 
 9
 I am essentially constrained by not only personal considerations that Mr. Autullo brings to me, but the facts of the crime, its totality and its scope, and the need for some proportion in sentencing, even though there are individual differences. So, it is with that I am, I think, conscientiously precluded from giving him the very low end of this, though I think the very top end is not necessarily called for under the circumstances either. Although my own leaning is toward the top end because the degree of -- because of the fact that it is an old law sentence because of the totality of the multi-kilo quantities of cocaine involved here, his flight for a substantial period of time, and the fact that his sentence has to bear some proportion to other sentences who are similarly situated to him.
 
 
 10
 (12/8/94 Sentencing Transcript at 25-26) (emphasis added) Autullo appeals, claiming that court based its sentence upon improper personal considerations.
 
 ANALYSIS
 
 11
 Our review of a district court's sentencing decision is extremely narrow in pre-Guidelines cases. United States v. Crabtree, 37 F.3d 318, 320 (7th Cir. 1994); United States v. McClain, 2 F.3d 205, 206 (7th Cir. 1993). We will affirm a sentence that is within the statutory limits unless "the court based the sentence upon improper considerations or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence." United States v. Lewis, 910 F.2d 1367, 1373 (7th Cir. 1990); See also Crabtree, 37 F.3d at 321; McClain, 2 F.3d at 206. We will not disturb a district court's sentence because of inclusion of an improper factor if other justifiable considerations support the sentence. United States v. De La Cruz, 870 F.2d 1192, 1198 (7th Cir. 1989); United States v. Ford, 840 F.2d 460, 467 n.4 (7th Cir. 1988).
 
 
 12
 Autullo does not contest that his eighteen year sentence is within the statutory guidelines.[3] Autullo argues that he was deprived of due process during sentencing because the district court based its sentencing decision on personal considerations. Autullo directs the court's attention to the two quoted passages in the sentencing transcript where Judge Kocoras noted this case had affected him more that any other case in his fourteen years on the bench (12/8/94 Sentencing Transcript at 21-22) and spoke of "personal considerations" that Autullo brought to the court (Id. at 25).[4] These statements, according to Autullo, establish that the trial judge impermissibly allowed personal feelings to colour his decision concerning the length of the sentence.
 
 
 13
 In support of his claim, Autullo argues that the court personalized its sentencing decision in much the same way as the sentencing court in United States v. Bakker, 925 F.2d 728 (4th Cir. 1991).[5] In Bakker the sentencing court stated of the defrocked television evangelist James Bakker that: "He had no thought whatever about his victims and those of us who do have a religion are ridiculed as being saps from [sic] money-grubbing preachers or priests." Bakker, 925 F.2d at 740. The Fourth Circuit held that the court had allowed its own religious principles to intrude on the sentencing process and ordered the sentence vacated and remanded the case for resentencing. Bakker, 925 F.2d at 740-41.
 
 
 14
 Autullo's reliance on Bakker is misplaced. In Bakker, the sentencing judge justified his sentence based upon the ridicule and humiliation he felt as a religious person. It is an unfair reading of Judge Kocoras' comments to say that he was imposing sentence because of a similar personal sense of outrage or indignation. Judge Kocoras' statements that this case had affected him on a deeply personal level, fairly construed, simply highlight the seriousness of Autullo's offense. Autullo was part of a large scale drug operation responsible for distributing between 150-200 kilograms of cocaine. He fled from the authorities and remained a fugitive for almost five years, using the profits of his drug trade to support himself. Judge Kocoras' comments did not demonstrate personal animus but were an expression of outrage at the great harm and tragic results that Autullo's crimes had on the youth of the community, as well as on the defendant himself. See United States v. Madison, 689 F.2d 1300, 1314-15 (7th Cir. 1982) (sentencing process can vindicate societal interests such as protecting vulnerable members of the community), cert. denied, 459 U.S. 1117 (1983); United States v. Roth, 934 F.2d 248, 253 (10th Cir. 1991) (sentencing judge's reference to his own military service did not impermissibly personalize sentencing but highlighted adverse impact of defendant's theft of military equipment on the military and public at large).
 
 
 15
 Autullo's argument elevates form over substance. He fixes on Judge Kocoras' use of the word personal without examining the context in which the word is used. A full examination of the sentencing transcript reveals that Judge Kocoras imposed a sentence based upon a number of factors, including: the quantity of cocaine distributed by Autullo (12/8/94 Sentencing Transcript at 21-22); the large sum of money that Autullo made from drug sales (Id. at 23); the impact of Autullo's drug business on the community (Id. 22-24); the length of sentences imposed upon other members of the conspiracy (Id. at 22, 26); Autullo's flight and fugitive status (Id. at 24); and Autullo's acceptance of responsibility and acknowledgment of the extent of his drug distribution (Id. at 25). Autullo does not, nor could he, argue that reliance on any of these factors constitute an abuse of discretion. See Bakker, 925 F.2d at 740 (district court may consider impact of defendant's crimes on community, vindicate the community's interest, and embody public condemnation and moral outrage); De la Cruz, 879 F.2d 1197-98 (defendant's fugitive status, association with "big time" drug dealers, and desire to send message to other similarly situated drug traffickers proper considerations).
 
 
 16
 A fair reading of the sentencing transcript shows that Judge Kocoras exercised his discretion in sentencing in a restrained and thoughtful manner and attempted to impose a sentence commensurate with Autullo's crimes. The sentence imposed by the district court is AFFIRMED.
 
 
 
 [1]
 Autullo was charged with conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846, causing individuals to travel interstate in furtherance of a cocaine distribution business in violation of 18 U.S.C. Secs. 1952 and 2, and possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1)
 
 
 [2]
 See United States v. Bafia, 949 F.2d 1465 (7th Cir. 1991), cert. denied, 504 U.S. 928 (1992); United States v. Cappas, 29 F. 3d 1187 (7th Cir. 1994)
 
 
 [3]
 Autullo pled guilty to distribution of 22 kilograms of cocaine. Count One of the superseding information carried a mandatory minimum of ten years' imprisonment and a maximum penalty of life imprisonment and maximum fine of $250,000. Counts Two, Three, and Four each carried a maximum penalty of five years' imprisonment and a maximum fine of $250,000. Under the terms of the plea agreement and pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), the sentence for Count One was to be at least ten years' but no more than twenty one years' imprisonment and the sentences for Counts Two, Three, and Four were to run concurrent with the sentence imposed for Count One
 
 
 [4]
 Judge Kocoras' reference to "personal considerations" is ambiguous as to whether he is speaking about his own personal considerations or considerations about Autullo's personal life that Autullo had brought to the court's attention
 
 
 [5]
 Autullo discusses a number of cases in which the district court was found to rely on improper factors when imposing its sentence. See United States v. Diamond, 561 F.2d 557, 559 (4th Cir. 1977) (parochialism); United States v. Lemon, 723 F.2d 922, 924 (D.C. 1983) (membership in a religious sect); United States v. Wiley, 267 F.2d 453, 456 (7th Cir. 1959) ("policy" of no probation for defendants who exercise their right to a trial). Autullo, however, does not argue that the district court relied upon any of these improper factors