# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-2646

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GIRALDO TRUJILLO-CASTILLON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cr-00223-RTR-1—**Rudolph T. Randa**, *Judge*.

ARGUED MARCH 27, 2012—DECIDED AUGUST 14, 2012

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Giraldo Trujillo-Castillon pled guilty to one count of conspiring to use unauthorized accounts and one count of aggravated identity theft. He received an above-guideline, 48-month prison term for the conspiracy, and a mandatory, consecutive 24-month term for aggravated identity theft. Trujillo-Castillon appeals the 48-month sentence, first arguing that the court ignored his evidence in mitigation.

However, the court considered his lesser participation in the conspiracy but found it was outweighed by the severity of his crime and his underrepresented criminal history. Trujillo-Castillon next contends that his Cuban heritage was improperly factored into his sentence. His argument finds support in the transcript, and we cannot say with any reasonable certainty that his national origin had no impact, so we vacate his sentence and remand for resentencing.

## I. BACKGROUND

Giraldo Trujillo-Castillon and two co-defendants were indicted for fraudulently using credit and gift card accounts for purchases totaling $139,063.23. Count one charged the trio with conspiring to violate 18 U.S.C. §§ 1029(a)(2) and (3), which respectively prohibit intentionally using an unauthorized access device, and knowingly possessing fifteen or more such devices with the intent to defraud. 18 U.S.C. § 1029(b)(2). Counts two and three alleged fraudulent use and possession of unauthorized access devices in violation of 18 U.S.C. §§ 1029(a)(2) and (3). And count four charged aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).

Trujillo-Castillon pled guilty to counts one (conspiracy) and four (aggravated identity theft), and the remaining counts were dismissed pursuant to his plea agreement. His Presentence Investigation Report ("PSR") revealed that he was born in Cuba and fled to the United States at seventeen years old. It calculated his offense level at sixteen, and his criminal history category at four. His

recommended guideline range was 33 to 41 months in prison for the conspiracy. He also faced a consecutive, mandatory 24-month term for the aggravated identity theft conviction.

At sentencing, the government argued that Trujillo-Castillon deserved a sentence at the top of the guideline range because of his criminal history and his general attitude toward crime. Pointing to the defendant's admission that he viewed fraud differently than violent crimes, the government argued that "it may be possible to explain his stated attitude because of his Cuban heritage. . . . Maybe there is a different attitude toward private property in Cuba." The government noted Trujillo-Castillon's statement that his only friend in the United States was his wife, and said that "if you play by the rules, if you join us, if you become American, [you] will have many [] friends in the United States." The government then turned to "why people should come to the United States," professing that "if he came here because he thought it would be easy, then I would simply suggest that he and others like him either wise up, or don't come."

Defense counsel did not object to this line of argument; instead, he responded in kind. He explained that there is an "attitude" in Cuba that when you steal "you're pulling a Robin Hood type of act." He suggested that many Cuban immigrants have a hard time adjusting to "the American way of life." And he argued for a sentence at the low end of the guidelines because Trujillo-Castillon had "never challenge[d] the Government's

evidence or accusation" and the PSR adequately accounted for the defendant's criminal history. Counsel highlighted the defendant's departure from the conspiracy before most of the fraudulent transactions occurred as evidence in mitigation, and requested a 33-month sentence.

The sentencing court began by finding that even though Trujillo-Castillon's "lesser participation in this offense . . . mollifies the severity of the offense . . . that can't be divorced from [his criminal] history." The court then noted that the defendant had never successfully completed supervision and that he had "one of the worst records" the court had "ever seen." The court detailed Trujillo-Castillon's prior arrests and convictions for theft, counterfeiting, and other fraud-related offenses. It concluded that the defendant's criminal history had been substantially underrepresented.

The court then turned to the defendant's "characteristics." The court first explained that Trujillo-Castillon's "lifestyle" cannot "be blamed on Cuba." It said that his record was reminiscent of "when the Mariel people came over here and created crime waves all over the place"; "When [Fidel] Castro emptied his prisons, and his psychiatric wards, and Jimmy Carter took them all in." The court continued that, unlike in Cuba, "in America, private property is sacrosanct. It's not the Government's property. . . . And that's the way we live in America. And that's why it's a serious offense when you do this." The court inveighed that coming from "deprived circumstances" does not "give anybody who

comes from Cuba the right to . . . not value the very
constitutional rights that other citizens possess." Finally,
before imposing Trujillo-Castillon's sentence, the court
stated:

> You have a criminal history category of 4, but
> the Court's view is that the sentencing guidelines
> don't represent what the Court has just character-
> ized is your criminal history . . . it's under-repre-
> sented. So when I look at the total circumstances
> of your history, coupled with the nature and
> severity of the crime, and even your lesser involve-
> ment in this offense, it is, as the Court has indi-
> cated, a pattern that requires that I go above
> the guidelines in this sentence. . . .

The court sentenced Trujillo-Castillon to 48 months in
prison for the conspiracy count, exceeding his guideline
range by seven months. He also received the mandatory
24-month prison term for aggravated identity theft, to
run consecutively. Judgment was entered, and this
appeal followed.

## II. ANALYSIS

Trujillo-Castillon advances two arguments on appeal.
First, he contends that the sentencing court overlooked
the evidence he presented in mitigation, particularly
proof that he left Wisconsin before the bulk of the fraudu-
lent transactions occurred. Second, he argues that the
court "allowed its passions and past experiences with
Cuban immigration and crime to negatively impact and

enhance [his] sentence." The government disagrees. We address each issue in order.

### A. The Sentencing Court Adequately Considered Trujillo-Castillon's Mitigating Evidence

We review *de novo* whether a district court followed proper procedures in sentencing, including its consideration of the 18 U.S.C. § 3553(a) factors and any evidence in mitigation. *United States v. Vallar*, 635 F.3d 271, 277-78 (7th Cir. 2011). If we find no significant procedural error, we will review the substantive reasonableness of the defendant's sentence for an abuse of discretion. *United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010). We presume that a correctly calculated, within- or below-guideline sentence is reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007) (within-guideline); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008) (below-guideline). But we do not presume that an above-guideline sentence is unreasonable. *United States v. Reyes-Hernandez*, 624 F.3d 405, 409 (7th Cir. 2010).

Trujillo-Castillon claims the sentencing court did not consider his "lesser participation" argument. A court must address the defendant's non-frivolous sentencing claims by providing a "reasonable justification" for the sentence imposed. *Coopman*, 602 F.3d at 818. The record here shows that the sentencing court satisfied its duty on this front. The court stated that "lesser participation does [mollify the severity of the offense] . . . [b]ut that can't be divorced from your history here." It noted

that Trujillo-Castillon had never "complete[d] a successful supervision" and had one of the worst criminal records the court had ever seen. After reviewing the sentencing transcript, we are confident that the court considered Trujillo-Castillon's evidence in mitigation but simply assigned it lesser weight than the defendant would have liked. *See id.* We find no error here.

**B. Remand Is Necessary to Ensure that Trujillo-Castillon's Cuban Heritage Was Not a Factor in His Sentencing**

Trujillo-Castillon's second argument is that his Cuban heritage negatively affected his sentence. Because Trujillo-Castillon did not object at sentencing, we review for plain error. *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010). To prevail, the defendant must first show that (1) there was error, (2) it was plain, and (3) it affected his substantial rights. *United States v. Moody*, 664 F.3d 164, 166 (7th Cir. 2011). We will remand to avoid a "miscarriage of justice," which the Supreme Court has defined as an error that "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Day*, 418 F.3d 746, 750 (7th Cir. 2005) (quoting *United States v. Olano*, 507 U.S. 725, 746 (1993)).

The guidelines make clear that race, sex, national origin, creed, religion, and socio-economic status "are not relevant in the determination of a sentence." U.S.S.G. § 5H1.10; *see also* 28 U.S.C. § 994(d) ("The Commission shall assure that the guidelines and policy statements

are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders."). A sentencing court's discretion to consider such factors is also constrained by the Constitution. *See, e.g., Pepper v. United States*, ___ U.S. ___, 131 S. Ct. 1229, 1240 n.8 (2011) ("Of course, sentencing courts' discretion under § 3661 is subject to constitutional constraints").

In *United States v. De La Cruz*, we held that a sentencing court's reference to a defendant's Cuban heritage did not require a remand. 870 F.2d 1192, 1196 (7th Cir. 1989). Defense counsel in that case raised the issue as support for a lesser sentence. The court, however, "made it clear that he did not accept the defense counsel's characterization of De La Cruz as a political prisoner from Cuba, but regarded him as a 'big time' drug dealer who had been involved with other prominent convicted Cuban drug traffickers." *Id.*

In a slightly different context, we vacated the defendant's sentence in *United States v. Guzman*, 236 F.3d 830, 833 (7th Cir. 2001), because the district court departed downward 25 levels after finding that the defendant's "cultural heritage" as a Mexican immigrant increased her likelihood of supporting her boyfriend's criminal activity. *Id.* Other courts have remanded for resentencing when "a reasonable observer, hearing or reading the quoted remarks, might infer, however incorrectly, that [the defendant's] ethnicity . . . played a role in determining [his or] her sentence." *See, e.g., United States v. Leung*, 40 F.3d 577, 586-87 (2d Cir. 1994) (remanding where the sentencing court's stated purpose

was to "generally deter others, particularly others in the Asiatic community").

In this case, we think that both the government and the sentencing court crossed the "very fine line of demarcation separating presentencing statements regarding a defendant's relationship with a country or its residents who have engaged in similar criminal activity there and statements concerning the race or national origin of the defendant which would violate his due process guarantees." *De La Cruz*, 870 F.2d at 1198. The government should have forgone discussing Trujillo-Castillon's national origin in the first place. And although the court did not expressly adopt the government's position, it did nothing to reasonably assure the defendant that his Cuban heritage would not factor into its calculus. *See id.* Instead, the court exacerbated the problem by comparing the defendant's conduct to the Mariel people who emigrated from Cuba more than thirty years ago. By lumping the defendant in with the Mariel people and expressly contrasting the values held by Americans with people, like the defendant, "who come[] from Cuba," the court arguably made Trujillo-Castillon's national origin a factor at sentencing. A reasonable observer hearing or reading the remarks might certainly think so.

It is unclear from the record whether (or why) the district court determined that the defendant's criminal history both outweighed his lesser participation *and* supported an upward departure. Therefore, we cannot be sure that the defendant's sentence comports with the

valid consideration of the § 3553(a) factors only. *See United States v. Onwuemene*, 933 F.2d 650, 652 (8th Cir. 1991) (remanding "[b]ecause we cannot say that the district court would have imposed the same sentence absent this impermissible consideration" of the defendant's status as a Nigerian immigrant). The government asks us to speculate, at the expense of Trujillo-Castillon. But we shouldn't have to, and we won't. Clarifying the basis for the defendant's sentence— or correcting the sentencing court's erroneous consideration of his national origin—requires only a brief resentencing procedure. *Leung*, 40 F.3d at 586 n.2 ("[C]orrecting sentencing errors usually demands only a brief resentencing procedure."). We think that is a very small price to pay.

## III. CONCLUSION

For the reasons stated above, we VACATE the defendant's sentence and REMAND for resentencing. Circuit Rule 36 shall apply on remand.