In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-2134

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRAD COOPMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:07-cr-196—**Rudy Lozano**, *Judge.*

ARGUED FEBRUARY 11, 2010—DECIDED APRIL 19, 2010

Before KANNE, WOOD, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge.* Brad Coopman was charged with possession of child pornography and receipt of child pornography. He pled guilty to the receipt charge without the benefit of a plea agreement. At the outset of Coopman's sentencing hearing, the district court adopted the factual findings in the pre-sentence investigation report (PSR) without objection from the parties. After the government presented its witness, Coopman offered expert

witness testimony in an effort to mitigate his sentence. At the conclusion of Coopman's evidence, the district court calculated a sentencing range of 151 to 188 months' imprisonment. The court then sentenced Coopman to 151 months' incarceration and 10 years' supervised release.

Coopman now challenges his sentence by alleging that the district court improperly placed presumptive weight on the guidelines, failed to consider non-frivolous arguments, and misapplied 18 U.S.C. § 3553. Coopman also argues that the district court imposed an unreasonable sentence. We affirm.

## I. Background

Because the issues raised in this case stem from Coopman's sentencing hearing, we need not explain in detail the circumstances surrounding his conviction. It is sufficient to note that in 2007 the Indiana State Police discovered that Coopman was using a peer-to-peer internet network to share three child pornography videos. After seizing his computer, the police discovered approximately thirty-five additional child pornography videos saved on his hard drive. This conduct formed the basis for Coopman's indictment and guilty plea.

In early March 2009, Coopman filed two sentencing memoranda with the district court. In one memorandum, Coopman addressed a perceived lack of empirical evidence supporting sentences derived from U.S.S.G. § 2G2.2 and urged the court to give the guideline little weight in sentencing him. In the second memorandum,

Coopman addressed the § 3553(a) sentencing factors. In support of his sentencing argument, Coopman included a letter on his own behalf, letters from his family, grades for a college-level course he completed while in detention, and a vitae for his psychologist, William Hillman. Coopman urged the court to adopt the mandatory minimum sentence—sixty months' imprisonment—as required by 18 U.S.C. § 2252(a)(2).

A few days later, Coopman appeared for sentencing. As there were no objections to the PSR, the district court adopted the factual statements in the report as its findings of fact. It then heard witnesses in consideration of the § 3553(a) factors. The government first presented its witness, Lafayette Police Officer Paul Huff, who had examined Coopman's home computer and found the child pornography videos on his hard drive. Officer Huff also testified regarding an earlier, unrelated incident involving Coopman, during which a Purdue University employee reported discovery of pornography websites accessed from a campus computer; most of the websites accessed had been adult pornography sites, but a few had been identified as child pornography sites. Coopman was later discovered to be the person who initiated the searches, although admittedly, the investigation could only trace Coopman's involvement to search terms that he deliberately typed; it could not differentiate between pop-ups and sites that Coopman actively sought. Nonetheless, testimony demonstrated that some of the search terms attributable directly to Coopman clearly sought access to child pornography.

At the close of the government's presentation, Coopman presented his own witness, Dr. Hillman, a psychosexual evaluative expert. Significantly, Dr. Hillman's expertise is in the area of sexually violent offenders, not in child pornography or internet pornography. Dr. Hillman testified that it was his belief that Coopman was unlikely to exhibit sexual predatory behavior, and that with therapy, Coopman's pornography addiction could be abated substantially. In addition to his witness, Coopman also submitted exhibits proving that while in pre-trial custody he had completed several rehabilitation programs, including "Inside-Out Dad" and substance abuse treatment. He also proffered evidence of his training in electrical wiring with the Stafford Career Institute, which qualified him as a commercial, residential, and industrial electrician. At the close of the parties' submissions, the district court imposed a sentence of 151 months' imprisonment followed by 10 years' supervised release. Coopman appealed.

## II.  Analysis

Coopman alleges that the district court made substantial procedural and substantive errors and that the sentence it imposed is unreasonable. We address each argument in turn.

### A.  Procedural and Substantive Errors

Whether a district court followed proper procedures in imposing a sentence is a question of law that we review

*de novo. United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009). In this case, Coopman alleges three procedural and substantive errors. We find that each is without merit.

First, Coopman argues that the district court improperly presumed that the guidelines were reasonable. As evidence of this, Coopman points to one stray remark made by the district court, where it commented that "the guidelines [are] fair and reasonable based on the facts of this case." (App. at 13.) But just because a court thinks that a guideline sentence is reasonable in a given circumstance does not mean that the court applied a *presumption* of reasonableness. *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008) ("The court did *not* say that a sentence within the guidelines range was always reasonable; it stated that such a sentence was reasonable 'here.' "). Further undermining Coopman's argument is the fact that at the outset of its sentencing pronouncement, the court noted that it had considered the guidelines "even though they [were] only advisory. . . ." (App. at 12.) And although we recognize that a court's proclamation that the guidelines are advisory does not always accord with its application of them, *see United States v. Schmitt*, 495 F.3d 860, 864 (7th Cir. 2007), there is no evidence that the court's statement about the advisory nature of the guidelines was cursory. There is more than enough evidence to show that the court considered the guidelines only in their advisory capacity. Coopman's argument thus fails.

Coopman next argues that the court improperly failed to consider evidence in mitigation of his sentence. A court

must address a defendant's non-frivolous sentencing claims by providing reasonable justification for the sentence imposed. *United States v. Kilgore*, 591 F.3d 890, 893 (7th Cir. 2010). We think it is abundantly clear that the court did address Coopman's arguments—it merely reached a conclusion different than the one for which Coopman had hoped.

Coopman alleges that the court failed to consider both Dr. Hillman's testimony and Coopman's argument that U.S.S.G. § 2G2.2 is not based on empirical evidence. But the transcript indicates otherwise. With regard to Dr. Hillman's testimony, it is evident that the judge harbored serious concerns about the doctor's specific experience, methods, and analysis. One issue the judge raised involved Dr. Hillman's expertise. Dr. Hillman was not an expert in child pornography. His speciality was in violent sex offenders. This may have been the reason that Dr. Hillman struggled to differentiate between recidivist offenders that commit contact offenses and those that view child pornography. (*See* Tr. 2:104, 140-41.) Most of his testimony focused on the likelihood that Coopman's conduct would elevate to physical contact rather than on the likelihood that he would continue viewing child pornography. As the court implied, one of its primary concerns was with the harm that is caused by the making of child pornography. (*See id.* at 2:143-44, 147-48.) But Dr. Hillman failed to recognize child pornography as a harm in and of itself, and this failure undermined the relevance of his testimony.

The district court judge also seemed particularly concerned with Dr. Hillman's methodology and analysis. In

fact, the judge questioned Dr. Hillman extensively in an effort to alleviate these concerns. As the judge noted, Dr. Hillman's primary basis for his conclusions was Coopman's own veracity, yet his veracity was shown to be lacking. Coopman had told Dr. Hillman that he had never viewed or attempted to view child pornography while employed at Purdue. The government showed that this statement was not true. (*Id.* at 1:84, 2:120-21.) And when the judge asked Dr. Hillman about his conclusions, Hillman admitted that his answers might change if Coopman were being dishonest with him. (*Id.* at 2:142-43.)

These deficiencies in Dr. Hillman's testimony certainly could serve as the basis for the court's discounting of that testimony. And, in fact, that was precisely the court's reasoning when it explained: "I do question what in this particular case [Dr. Hillman] relied on. I find that the testimony is somewhat suspect because it heavily relied on the truthfulness of the defendant." (App. at 13.) Because the court adequately explained its reasons for rejecting Coopman's proffer of Dr. Hillman's testimony, we find no merit to Coopman's claim.

Coopman also claims that the district court failed to explain its reasons for rejecting Coopman's § 2G2.2 argument. We note initially that although *Kimbrough* allows a court to disagree with the guidelines based on policy grounds, it does not *require* a court to do so. *Kimbrough v. United States*, 552 U.S. 85, 107-09 (2007). In fact, we held exactly that in *United States v. Huffstatler*, 571 F.3d 620, 624 (7th Cir. 2009): "[W]hile district courts perhaps have the freedom to sentence below the child-

pornography guidelines based on disagreement with the guidelines . . . they are certainly not required to do so." The district court said that it considered the argument Coopman proffered, and that it considered the government's response. It simply reached the conclusion that the guidelines were appropriate in the particular case before it.

Coopman attempts to distinguish the cases of *United States v. Aguilar-Huerta*, 576 F.3d 365, 367-68 (7th Cir. 2009), and *Huffstatler*, 571 F.3d at 623-24, where we held that a court need not address a defendant's argument that the guidelines are unworthy of application. Coopman's basis for distinction is that in those cases the defendants argued for full-scale rejection of the guidelines, whereas in his case, Coopman only argued for leniency in applying the guidelines. We find this argument to be a distinction without a difference. Although Coopman states that he only argues for leniency in applying the guidelines, what he is in fact arguing is that the court should ignore the guidelines because they are methodologically flawed. Thus, in essence, Coopman is arguing that the guidelines are unworthy of application, at least full application. The district court was not required to accept Coopman's argument, and its explanation was sufficient.

The last procedural error Coopman alleges is that the district court failed to consider properly the 18 U.S.C. § 3553(a) factors. In imposing a sentence, "[t]he court need not address every § 3553(a) factor in checklist fashion, explicitly articulating its conclusions regarding

each one. . . . Instead the court may simply give an adequate statement of reasons, consistent with § 3553(a), for thinking the sentence it selects is appropriate." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008) (internal quotation marks omitted). Here, we think it is abundantly clear that the district court considered Coopman's arguments in light of § 3553(a). In fact, the coup de grâce to Coopman's argument is that the court announced its sentence at the culmination of two pages of transcript detailing the factors that the court considered. Those factors included the facts of Coopman's particular case, the harm to the victims, the harm to society, Coopman's history and characteristics, the seriousness of the offense, the deterrent value of punishment, protection of the public from the defendant's future crimes, and the need to rehabilitate the defendant. (Tr. 2:191-92.) Because the court considered the § 3553(a) factors, we reject Coopman's argument.

### B. *Reasonableness of Sentence*

Finally, Coopman argues that the sentence imposed was unreasonable. Once a court is satisfied that the district court committed no significant procedural error, a court will then review the reasonableness of the sentence imposed under an abuse of discretion standard. *United States v. Gordon*, 513 F.3d 659, 666 (7th Cir. 2008). On appeal, the reviewing court applies a presumption of reasonableness to a within-guidelines sentence. *United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007).

In support of this argument, Coopman merely recites reasons we have already rejected above. He points to his age, lack of criminal record, vocational training while incarcerated, and Dr. Hillman's testimony. As we explained, the district court was well within its discretion to reject all of these arguments offered in mitigation of Coopman's sentence. Because the district court acted reasonably in imposing Coopman's sentence, this argument is without merit.

### III.  Conclusion

The district court committed no procedural or substantive error in sentencing Coopman and it imposed a reasonable sentence. Accordingly, Coopman's sentence is AFFIRMED.