In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1590

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN MANTANES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cr-00049-1—**Ruben Castillo**, *Judge.*

ARGUED NOVEMBER 5, 2010—DECIDED JANUARY 13, 2011

Before EVANS, SYKES, and HAMILTON, *Circuit Judges*.

EVANS, *Circuit Judge*. During 2008, federal agents got wind of the fact that someone using a certain Yahoo! account was trading in child pornography and bragging, online, about molesting children. That someone turned out to be John Mantanes, a dentist in his late 40s who ran his own dental clinic in Mt. Prospect, Illinois.

In January of 2009, agents executed a search warrant at Mantanes' home. The search uncovered some 1,380 images

and 141 videos of children engaged in sexually explicit conduct. They portrayed children engaged in sexual intercourse, bestiality, masturbation, and sadistic and masochistic conduct. Here's a sampling of some of the worst images found on Dr. Mantanes' computer:

> One image depicts a female infant on her stomach with her genitals exposed and a sharpie marker inserted into her anus;

> One image depicts a close up of an infant female's genitals. The infant's genitals are pierced with a needle. Adult fingers are spreading the infant's vaginal area. A caption at the top of the photograph reads "Two Years Little Girls Tortured with Needle";

> One image depicts a naked prepubescent female child bound by a rope around her legs, waist and arms. A handkerchief is tied around the girl's face, covering her mouth. A sharpie marker is inserted into her vagina;

> One image depicts an adult male's penis urinating on a naked prepubescent female. The child is sitting, with her legs spread apart, in a bathtub and the adult male is standing over her;

> A video, entitled "Kiki crying in pain while being ass fucked" depicts a young female child screaming in pain as she is being raped.

Also among the pictures Mantanes traded online were non-explicit photos of his three daughters, including one picture of his sleeping baby daughter with a sign reading "no limits" displayed next to her. Mantanes later

explained that the sign meant that there were "no limits" on what the receiver of the picture could do to the girl.

Mantanes was subsequently indicted on four counts of receiving, and three counts of possessing, child pornography. Pursuant to a written plea agreement, he pled guilty to one count of receiving child pornography. The other counts were dismissed. With several adjustments, some up and one down, the parties agreed that Mantanes' advisory guideline range was 210 to 262 months. The statute, however, capped the stiffest possible sentence at 240 months. The government argued for the maximum sentence; the defense for the 60-month mandatory minimum. The district judge, who noted that he "lost sleep over the case," imposed a 210-month sentence. Today, we resolve Mantanes' appeal from the sentence he received.

Mantanes argues that the judge failed to properly consider the 18 U.S.C. § 3553(a) factors, thereby committing procedural error.[1] Mantanes also argues, relying

---

[1] Section 3553(a) reads:

> Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the
> (continued...)

on *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), that the guidelines for this type of crime are substantively unreasonable and the judge abused his discretion when he imposed the 210-month term. We review the claims of procedural error *de novo*, *United States v. Corson*, 579 F.3d 804, 813 (7th Cir. 2009), and the sentence imposed for an abuse of discretion. *Cf. United States v. Coopman*, 602 F.3d 813, 819 (7th Cir. 2010).

A district court need not discuss all the § 3553(a) factors, but it must give them meaningful consideration. *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005). Here, the judge considered many of the factors, stating at sentencing:

> "[Y]ou are being convicted of having the images that you had, which is 1380 images and 141 videos. And just think about that. Most people don't have 140 of their own personal movies at home. You had 141 child pornography videos of the worst kind. And so any idea of a five-year sentence I think is ridiculous, would seriously deprecate the seriousness

---

[1] (...continued)

offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for [the offense] . . . .

of this offense. . . .To me, that is a dangerous situation for the general public. . . . I have to look at these personal characteristics of you. I certainly have to deter this type of behavior. . . . I think this needs to be deterred. It needs to be treated. I think the public needs to be protected from these type of child pornography activities on your part which were just prolific. . . . And so taking all of that into consideration, I believe the only appropriate sentence is to sentence you to a total term of 210 months on Count 1."

It is clear from what we just quoted, as well as from the entire sentencing transcript, that the experienced district judge here adequately considered the § 3553(a) factors—he explicitly mentions his consideration of the seriousness of the offense, the need for deterrence, the need to protect the public, Mantanes' personal characteristics and the need for sex offender treatment.

Still, Mantanes argues that in his consideration of the § 3553(a) factors the judge did not properly consider testimony by Mantanes' expert witness, Dr. Richard Carroll, that Mantanes was unlikely to re-offend and suffered from major depressive disorder.

At the sentencing hearing, Dr. Carroll opined that although Mantanes is a pedophile, hypersexual, and suffering from major depressive disorder, he has a lower risk of recidivism than the typical person convicted of a child pornography offense. During cross-examination, however, Dr. Carroll admitted that some of the testing on which he relied is contradicted by other literature which he did not include in his report, and

that there were limitations on another of the tests that he used. Further, Dr. Carroll's testimony was contradicted by the writings of another doctor, who Dr. Carroll readily admitted was one of the best in the field, as well as by testimony Dr. Carroll himself gave in another case.

In considering Dr. Carroll's testimony, the judge admitted that he found some of the content of the report troubling, as it calls into question some of Dr. Carroll's conclusions. Specifically, the judge stated:

> I find ultimately the report, while I appreciate the candor of the report, troublesome to you because of the fact of the fantasies that are included in here are just some very, very troublesome fantasies. . . . I've had child pornography cases where somebody looked at child pornography because of incidental accidental curious natures, but never because of being a pedophile, never because of this new hypersexual category that Dr. Carroll mentions. I think this needs to be deterred. It needs to be treated. I think the public needs to be protected from these types of child pornography activities on your part which are just prolific.

Given these comments, as well as the evidence introduced in contradiction of Dr. Carroll's testimony, it is clear that the judge read Dr. Carroll's report and considered his testimony, but overall found the doctor's conclusion that Mantanes was unlikely to re-offend questionable in light of the evidence presented. Further, the judge found that the content of the report suggested

that Mantanes was a pedophile with continuing urges, and that given these facts, the § 3553(a) factors of deterrence, treatment, and public protection called for a within-guideline sentence.

In terms of Dr. Carroll's diagnosis of Mantanes as suffering from major depressive disorder, the judge clearly considered this as well. At the sentencing, he referred to Mantanes' depressed condition repeatedly, finally concluding:

> To the extent that [your child pornography activities] were generated by your depressed condition, which I do not for one moment dispute, I will take that into consideration by the range of the guideline sentence that I will impose, but I don't think for a second that any of the matters that have been brought to my attention or the Dr. Jekyll/[Mr.] Hyde nature of this offense, the fact that you, number one, are smart, have gotten good grades, made it through dental school, had a dental practice, were married, had three children in any way justifies some type of non-guideline sentence in this case.

The judge considered Mantanes' depressed condition, as well as the other unique characteristics of Mantanes as an individual and offender when handing down his sentence, and in the end concluded that these factors, while supportive of a sentence at the bottom of the guideline range, did not provide enough mitigation to support a below-guideline sentence. Therefore, we have no trouble concluding that the judge gave meaningful consideration to Dr. Carroll's report and the § 3553(a) factors,

and thus that no procedural error was committed during the sentencing hearing.

Mantanes also argues that his sentence was substantively unreasonable. He urges us to follow the reasoning of the Second Circuit in *Dorvee*. But *Dorvee* is easily distinguishable. In remanding for resentencing in *Dorvee*, the Second Circuit expressed concern that the sentencing judge assumed that the defendant was likely to assault a child (although he was convicted of a non-contact offense), and that this assumption motivated the sentencing judge to place "unreasonable weight" on the need to protect the public. *Dorvee*, 616 F.3d at 183.

Although Mantanes was also convicted of a non-contact offense, the judge here did not place unreasonable weight on the need to protect the public from Mantanes; it was just one of the many factors considered at sentencing. In evaluating this factor, the judge found it telling that Mantanes' own expert concluded that he was a pedophile with ongoing fantasies. The judge also received victim impact statements from some of the then-children pictured in the pornographic images traded by Mantanes, as well as a statement from Mantanes' estranged wife about the on-going damage his behavior has caused her family.

Mrs. Mantanes continues to fear for her children's physical and psychological safety, writing:

> [E]very day I cry when I think our children's images, our angels, are being morphed by depraved, evil, perverted people. I wonder when I am stopped at the stop light if the man in the next car is one of them. . . .

> that one day he will recognize the children and try to snatch them. . . . Does anyone know what it is like to be hurt, shocked, betrayed, ripped apart, and then to pretend to be strong and calm, while your child night after night cries and begs you to hold her hand until she can fall asleep?

Clearly, Mantanes has caused considerable harm, both to strangers and to his family, and it was reasonable for the judge to conclude that the public needed protection from him. True, the judge put considerable weight on this factor, but the weight was not *undue*.

Further, the Second Circuit in *Dorvee* found procedural error in the application of the guidelines, and concluded the error colored the sentencing in such a way as to bolster a finding of substantive unreasonableness as well. Specifically, the initial PSR guideline range for Dorvee was 262 to 327 months, while the statutory maximum was 240 months, thereby making the guideline a point of 240 months, not a range. However, it appeared that although the sentencing judge understood that the maximum available sentence was 240 months, he mistakenly believed that the guideline range was still 262 to 327 months. As a result, the Second Circuit felt that he worked from the erroneous assumption that it was a "forgone conclusion" that a 240-month sentence would be upheld on appeal because it was "relatively far below" the initial guideline range and so he may not have employed a reasonably individualized application of the § 3553(a) factors. *Id.* at 184.

In contrast, there was no procedural error in Mantanes' sentencing, and as discussed, the judge employed an

eminently reasonable and extremely individualized application of the § 3553(a) factors in arriving at Mantanes' sentence. Further, Mantanes was sentenced to 210 months, which was both at the bottom of the agreed-upon guideline range and below the 240-month statutory maximum. This makes our case quite different from the situation before the court in *Dorvee*.

The *Dorvee* court, after noting the sentencing errors we have mentioned, went on to observe that the errors "were compounded by the fact that the district court was working with a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *Id*. at 184.

The Second Circuit explained that section 2G2.2 was not the product of the Sentencing Commission's usual empirical studies and independent policy judgment. Instead, the applicable guideline ranges have escalated through a series of congressional directives, many of which the Sentencing Commission has actively opposed. *Id*. at 184-86. The result, as described by the Second Circuit, is a guideline "cobbled together" that "routinely" produces guideline ranges "near or exceeding the statutory maximum, even for run-of-the-mill cases." *Id*. at 186. Whether one agrees or disagrees with the concerns expressed by the Second Circuit, it is ultimately for Congress and the Commission to consider these concerns. Having said that, however, those concerns can certainly be taken into account by district judges when exercising their sentencing discretion under the now advisory guidelines.

One last point. Unlike the Second Circuit, we apply a presumption of reasonableness to a within-guideline sentence, and it is up to the defendant to overcome this presumption. *Coopman*, 602 F.3d at 819; *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006). In this case, given the obvious care and individualized application of § 3553(a) with which the judge approached the sentencing, the lack of any colorable procedural error, and the fact that the sentence imposed was at the bottom of the undisputed guideline range, we cannot conclude that Mantanes has overcome the presumption of reasonableness.

For the foregoing reasons, the judgment of the district court is AFFIRMED.