In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3619

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONDALE LEE CHAPMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:11-cr-40031—**J. Phil Gilbert**, *Judge.*

ARGUED JUNE 12, 2012—DECIDED SEPTEMBER 20, 2012

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Rondale Chapman pleaded guilty to producing child pornography, a crime punishable by no less than 15 years in prison. *See* 18 U.S.C. § 2251(a), (e). For several years Chapman, now 46, lured kids as young as 12 to his home with marijuana and alcohol and filmed them, usually through "peepholes," engaging in sexually explicit conduct. Chapman faced a guidelines range of life imprisonment and was sentenced to a total of 40 years.

On appeal he contends that the district court did not fully evaluate his arguments in mitigation, and also failed to adequately explain its choice of sentence. On the surface the first of these contentions seems plausible, but only because Chapman exaggerates the evidence presented at sentencing about his background. When we look beyond his embellishment, it becomes clear that the "mitigating" factors he cites lacked evidentiary foundation or amounted to "stock" arguments that required no response from the judge. For that reason we affirm Chapman's sentence.

## I.  BACKGROUND

Since at least 2005, Chapman had been plying minors with marijuana and alcohol at his home in southern Illinois. Some teens engaged in sexual activity in the bathroom. Chapman used a camcorder to secretly film them through peepholes or when they left the bathroom door slightly ajar. He also filmed "C.S." in a bedroom when C.S. was 12 or 13. That victim, the son of a friend, found a nude photo of himself on Chapman's cell phone when he was 16. This discovery, along with a rumor about Chapman secretly filming bathroom occupants, prompted C.S. and another youth to sneak into Chapman's house in January 2011 and search for illicit videos. C.S. located and removed videotapes depicting several boys, including a nephew filmed at age 13, urinating or masturbating in the bathroom. Also on those tapes are the images taken of C.S. in the bedroom three or four years earlier; C.S. could not recall the incidents, but in

different sequences Chapman's hand can be seen fondling C.S.'s penis or his voice can be heard coaching C.S. to masturbate for the camera. The tapes were given to the police, and a search warrant executed at Chapman's home turned up others. The additional tapes include multiple clips of teens urinating, masturbating, and engaging in intercourse and oral sex. Among those clips are Chapman exposing his sleeping nephew's penis on a camping trip, and the nephew and a girl engaging in oral sex and intercourse in the bathroom when both were 15 or 16.

A probation officer calculated a guidelines imprisonment range of life based on a total offense level of 43 and Category I criminal history. The presentence report includes three pages about Chapman's personal and family history, his mental and emotional health, and his history of drug use. This information came from Chapman or family members; none is from social-services agencies or mental-health professionals. Except for Chapman's report of suffering previously undisclosed sexual abuse as a child, the probation officer's account is unremarkable:

> Rondale Lee Chapman, age 46, was born on September 19, 1965, in Cape Girardeau, Missouri. He was one of two children born to Hershel Chapman and Kathryn (nee Richardson) Starr. He indicated he has been a lifelong resident of Union County, Illinois, with the exception of living in Black Oak, Indiana, for less than a year at approximately five years of age. . . .

> The defendant's father . . . is approximately age 68 . . . . The defendant's mother . . . died in Febru-

ary 2010 after suffering from bone cancer. . . .
[P]rior to his mother's illness, she worked as a
restaurant waitress.

The defendant has one full sibling. . . . The
defendant also has four half siblings. . . . [His
maternal half-sister] has visited Chapman since
his incarceration in the instant offense.

When asked about his childhood, the de-
fendant advised that his parents divorced when
he was four or five years of age. He recalled posi-
tive memories of his parents together. Following
their divorce, Chapman . . . lived with his mother.
He stated he spent approximately every other
weekend with his father; however, it was some-
times less often.

The defendant indicated he was raised in "the
woods in [the Village of] Dongola." His mother
worked frequently to make sure that the de-
fendant and his siblings had the basic necessities.
He acknowledged that finances were a struggle
for the family. The defendant advised that he
was born with a medical condition resulting in
poor bone development. He explained that his
bones did not grow fast enough for his body's
development. He stated he was in a wheelchair
for a time and on crutches; however, he "grew out"
of the disease at approximately eight years of age.

The defendant described his mother as "number
one." They were very close, and the defendant
became emotional when speaking of her death.

He advised she was a "tough lady," explaining that she kept all of her problems to herself. She struggled with severe asthma and was often very sick. Due to her health problems, the defendant advised he had significant responsibilities and household chores.

. . . .

. . . [T]he defendant's [maternal half-sister] described her brother as "the greatest." She explained that he was in large part responsible for raising her and other siblings. He was much like a father-figure to her. [She] indicated that the discovery of the instant offense has completely shocked her and other family members. Regardless, she loves her brother and will support him.

The defendant has never been married. He indicated that over the past ten years, he has been sporadically involved in a relationship . . . .

Chapman has fathered one daughter. [She] . . . has always resided with her mother . . . .

. . . .

The defendant has never been diagnosed nor treated for any form of mental illness.

Chapman advised that he has been sexually abused by two family members. The first episode occurred between ages six and nine. His uncle sexually abused the defendant repeatedly during that time frame. The defendant did not report the abuse to anyone . . . .

When the defendant was in the sixth and seventh grades, he was again sexually abused by a different uncle. He reported the abuse happened on three or four occasions. Chapman indicated his uncle would take him out to eat and then fondle him.

Chapman stated that he has never received any treatment or counseling to address his history of sexual abuse.

. . . .

Chapman reported that he first consumed alcohol during the summer between his seventh and eighth grade years. . . . [H]e does not believe he has ever had an alcohol abuse problem.

The defendant admitted he first experimented with marijuana during eighth grade . . . . He advised that for the past 10 to 15 years, he has been a daily marijuana user. . . .

The only other two drugs reportedly used by the defendant were cocaine and methamphetamine. He first tried cocaine during his sophomore year of high school, and he last used the drug in 1992 or 1993. Chapman first used methamphetamine in 1992 or 1993, and he last used the drug in 2002. . . .

The defendant has never participated in any form of substance abuse treatment.

The probation officer did not view any of this information as warranting a prison sentence below the guidelines range.

In addition to lodging objections to the presentence report (which are not at issue in this appeal), Chapman's lawyer filed a sentencing memorandum proposing a 15-year sentence because of purported mitigating factors. Yet counsel did not submit additional evidence, not even an affidavit from Chapman, to flesh out the probation officer's sketch of the defendant's past. Instead, counsel relied entirely on information in the presentence report as her factual predicate. According to the lawyer (who also represents the defendant on appeal), Chapman was "raised in the woods in Dongola" and "endured an extremely difficult childhood" marked by bone disease, financial struggle, significant household responsibilities and chores attributable to his mother's ill health, and "severe trauma as a child due to sexual abuse by two family members." "Mr. Chapman's difficult childhood," counsel added, "likely resulted in his early drug use, as well as his continued drug use as an adult." "Clearly," said counsel, Chapman's "difficult childhood . . . had a profound, negative and enduring impact," and if not "for the lack of guidance, sexual abuse by family members, and trauma suffered during the course of his childhood," Chapman "might not be before" the sentencing court. On the other hand, counsel continued, Chapman had not been a "mass producer or mass distributor" of child porn, and he was remorseful, had a solid work history, zero criminal-history points, and—as an older sex offender with no convictions—a supposedly low risk of recidivism. Moreover, counsel asserted, Chapman's maternal half-sister was supportive. And a sentence greater than 15 years, the lawyer insisted, would cause an "unwar-

ranted sentencing disparity" because judges in four districts outside this circuit had imposed terms of 15 or 16 years in prosecutions for producing child pornography.

The government countered that 60 years would be more appropriate. The prosecutor cited studies showing "a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent," and labeled Chapman "more dangerous than the average consumer of child pornography" because he had committed a "hands-on" sex crime.

At sentencing the district court adopted the probation officer's guidelines calculations. Chapman did not testify or introduce evidence except for the testimony of a friend of 25 years who vouched for his character. During allocution Chapman expressed remorse and said he felt "so, so sorry for them kids." He said he had recognized his need for "help" and thus intentionally "left my video and my film out so it could be discovered." In her brief remarks, defense counsel did not mention Chapman's sentencing memorandum or emphasize any ground in mitigation. She described Chapman as "truly a family man" who suffers from a sickness and lamented that, even if sentenced to the 15-year minimum, he would be over 60 when released. A longer sentence, counsel asserted, would eliminate his incentive and opportunity to get better.

The district court imposed a total sentence of 40 years, offering this explanation:

> Okay. The Court's considered all the information in the presentence report, including guideline

computations and factors set forth in 18 U.S.C.
3553(a). The Court's considered the nature and
circumstances of the offense, the history and
characteristics of you as a defendant. This is ob-
viously your first really brush with the law, but
the nature and characteristics of this offense is a
horrendous crime, a horrendous crime that preys
on the—on those that you took advantage of these
young people, one of them your nephew, and
they'll have to live with that the rest of their lives,
too, Mr. Chapman; the need for the sentence
imposed to reflect the seriousness of the offense,
promote respect for the law and provide a just
punishment; to afford adequate deterrence to
criminal conduct, the production of child pornog-
raphy is—is a scourge on this society which
needs to be deterred; to protect the public from
further crimes of you; and to provide you with
the needed educational or vocational or medical
care, and you definitely need treatment for the
addiction that you have to this type of activity; and
the Court has fashioned a sentence that is neces-
sary but not greater than is needed to—to comply
with the purposes set forth in § 3553(a).

## II. ANALYSIS

On appeal Chapman does not challenge the district
court's adoption of the probation officer's guidelines
calculations. Instead he argues that the court failed to
address adequately his arguments in mitigation, which

Chapman identifies as his "low risk" of reoffending, his remorse and "sincere desire for treatment," the "devastating impact" of the "horrific sexual abuse" he endured as a child, his drug abuse and "its contribution to his legal and personal difficulties," his employment history, the support he enjoys from family and friends, and the need to avoid "unwarranted sentencing disparities." And because the court did not meaningfully consider these points, counsel contends, the court's choice of sentence is not adequately explained.

To avoid procedural error, sentencing judges must correctly calculate the guidelines range, evaluate the factors in 18 U.S.C. § 3553(a), and rely on properly supported facts. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Judges must also "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *see United States v. Snodgrass*, 635 F.3d 324, 330 (7th Cir. 2011). In selecting an appropriate sentence, district courts are expected to address principal, nonfrivolous arguments in mitigation, *United States v. Martinez*, 650 F.3d 667, 672 (7th Cir. 2011); *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010); *United States v. Cunningham*, 429 F.3d 673, 678-79 (7th Cir. 2005), but should disregard contentions lacking factual foundation. "[E]very defendant who asserts that his or her personal circumstances warrant leniency is compelled to supply a factual predicate for the contention," *United States v. Ramirez*, 675 F.3d 634, 641 (7th Cir. 2011); *see United States v. Curby*, 595 F.3d 794, 796-97 (7th Cir. 2010); *United States v. Diaz*, 533 F.3d 574, 577-78 (7th

Cir. 2008); *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008); *United States v. Swanson*, 483 F.3d 509, 513 (7th Cir. 2007); *United States v. Acosta*, 474 F.3d 999, 1003-04 (7th Cir. 2007); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005), and defendants who do not provide that foundation are "at the mercy of the instincts and intuitions of the sentencing judge," *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007). Moreover, even when arguments in mitigation are supported factually, judges need not "tick off every possible sentencing factor or detail and discuss, separately, every nuance of every argument." *United States v. Collins*, 640 F.3d 265, 271 (7th Cir. 2011); *see United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). The need for explanation varies with the circumstances, *United States v. Harris*, 567 F.3d 846, 853-54 (7th Cir. 2009), and a judge does enough by stating adequate reasons, consistent with § 3553(a), for concluding that the chosen sentence is appropriate, *United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010); *United States v. Harris*, 490 F.3d 589, 597 (7th Cir. 2007); *United States v. Dean*, 414 F.3d 727, 729 (7th Cir. 2005).

In Chapman's case, the district court acknowledged this prosecution to be his first "brush with the law." *See* 18 U.S.C. § 3553(a)(1). But the court emphasized the seriousness of the offense, *see id.*, labeling Chapman's conduct "horrendous" and noting how he preyed on young people including his nephew. Chapman's interest in child pornography, the court added, demonstrated a need to safeguard the public from his behavior. *See id.* § 3553(a)(2)(c). Addressing counsel's contention that Chapman suffers from an "illness," the court ex-

plained that the defendant would receive necessary "treatment for the addiction that you have to this type of activity." *See id.* § 3553(a)(2)(D). And consistent with § 3553(a)(2)(B), the court remarked that child pornography is a "scourge on this society" that must be deterred. The court's discussion of these factors was adequate. *See United States v. Mantanes*, 632 F.3d 372, 375 (7th Cir. 2011); *United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010); *Shannon*, 518 F.3d at 496-97.

We are not persuaded that the district court overlooked any mitigating factor requiring a response. Chapman's "low risk" of reoffending, the first of the grounds cited in his brief, cannot be characterized as a principal argument at sentencing. Although this ground is mentioned in Chapman's sentencing memorandum, he did not even mention it at the sentencing hearing. More importantly, the court was not required to discuss Chapman's purportedly low risk of recidivism because there is no factual basis in the record to support the contention. In Chapman's sentencing memorandum his lawyer asserted that the defendant's age along with "[s]cientific recidivism studies, his minimal criminal history, strong work ethic, and firm acceptance of responsibility indicate that any risk of recidivism is *extremely low*." But a lawyer's "unsupported statements are, of course, not evidence," *Diaz*, 533 F.3d 578, and here counsel did not submit reports or affidavits from experts, or any other evidence, to demonstrate a causal relationship between Chapman's criminal history, employment history, and acceptance of responsibility and his individual likelihood of reoffending. *See Tahzib*, 513 F.3d at 695 (explaining

that defendant bears burden of proving mitigating factors); *cf. Mantanes*, 632 F.3d at 375; *Coopman*, 602 F.3d at 817-18; *Curby*, 595 F.3d at 796-98; *United States v. Nurek*, 578 F.3d 618, 626 (7th Cir. 2009). In her sentencing memorandum counsel cited to recidivism studies as support for the assertion that the rate of reoffending "for sex offenders is low," yet those studies concern "sex offenders" generally. We have called it "a mistake to lump together different types of sex offender" and emphasized that a pedophilic sex offender like Chapman "who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 2373 (2012).

Much the same can be said about generalizations concerning age. Chapman faults the district court for not discussing his "age of 46 and his age upon release" as suggesting a low risk of recidivism and thus favoring a sentence at the 15-year statutory minimum. Again what's missing is a factual predicate. Chapman did not offer empirical evidence that the compulsion to produce child pornography "is so far diminished" at age 46—or even at 61, the age he would be after serving 15 years—"as to render the person relatively harmless, or indeed that it is diminished at all." *Beier*, 490 F.3d at 574-75. Indeed, since he was still producing child pornography when he was caught in his mid-40s, Chapman's argument that age is a mitigating factor is especially hollow.

Equally unconvincing is counsel's contention that the district court failed to appreciate the "devastating impact" of the "severe trauma" Chapman purportedly experienced after being abused by his uncles. Counsel writes in her brief that Chapman's two uncles subjected him to "horrific" sexual abuse. Certainly any sexual abuse of a child could be described as horrific, but counsel uses the term as a superlative without any factual support. The presentence report does not describe the sexual abuse except to say that an uncle fondled Chapman several times when he was in middle school. Chapman did not supply an affidavit or testimony to supplement this scant detail, nor did he even try to explain why the sexual abuse he suffered should be seen as a mitigating, rather than potentially aggravating, factor in a case where he may not be able to control his sexual impulses. We have said before that it's "not nearly enough" for defense counsel "to point out that his client had been a victim of child molestation"; what is missing is evidence "to indicate that such a history makes a person less able to avoid becoming a child molester, let alone becoming a producer of child pornography." *Beier*, 490 F.3d at 574. As it was the district court had nothing to evaluate.

Ditto with substance abuse, another of Chapman's purported factors in mitigation. Counsel argues that the district court should have addressed drug use as a mitigating factor because of "its contribution" to Chapman's "legal and personal difficulties." Yet the only evidence about drug use comes from the presentence report: Chapman smoked marijuana daily and had used

cocaine and methamphetamine in the past but given up both long before his arrest in this case. There is not a whit of evidence in the presentence report (or anywhere else in the record) to substantiate counsel's assertion that Chapman's drug use prompted him to commit sexual abuse or produce child pornography.

Chapman further argues that the district court failed to address the specter of an unwarranted sentencing disparity. *See* 18 U.S.C. § 3553(a)(6). But that factor is already taken into account whenever, as here, the sentencing court imposes a prison term within the guidelines range. *Gall*, 128 S. Ct. at 599; *United States v. Reyes-Medina*, 683 F.3d 837, 840-41 (7th Cir. 2012); *United States v. Pape*, 601 F.3d 743, 750 (7th Cir. 2010); *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). Challenging a within-range sentence as disparate is a "pointless" exercise; Chapman does not dispute that his guidelines range was properly calculated, and so § 3553(a)(6) cannot be a basis to deem the sentence unreasonable. *See United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008). In other cases we have upheld lengthy sentences for producers of child pornography even where, in contrast with Chapman's case, victims were not molested in the process. *See, e.g., United States v. Klug*, 670 F.3d 797, 801 (7th Cir. 2012); *United States v. Noel*, 581 F.3d 490, 500-01 (7th Cir. 2009).

The remaining factors in mitigation listed in Chapman's brief—his "sincere desire for treatment," his "deep remorse," his history of gainful employment, and the support of family and friends—are generic or "stock" argu-

ments that required no mention by the district court because they do not distinguish Chapman from many other defendants. *See United States v. Russell*, 662 F.3d 831, 854 (7th Cir. 2011) (remorse, college education, job skills), *cert. denied*, 132 S. Ct. 1816 (2012); *Collins*, 640 F.3d at 271 (childhood trauma); *United States v. Hall*, 608 F.3d 340, 347 (7th Cir. 2010) (no relationship with father, history of youthful misbehavior, alcohol and marijuana use); *United States v. Allday*, 542 F.3d 571, 572-73 (7th Cir. 2008) (age, health problems, stable work history). Moreover, there is no factual basis in the record to support the repeated references in Chapman's sentencing memorandum to his "extremely difficult childhood." To the contrary, the presentence report notes that Chapman "maintains a close relationship with all his siblings," has "positive memories of his parents together," had "the basic necessities" as a child, "grew out" of a childhood disease by age eight, and contributed to his family through unspecified "significant responsibilities and household chores." All of this is from Chapman's self reports, and none of it paints a picture of an "extremely difficult childhood."

What remains is Chapman's contention that his 40-year prison sentence is substantively unreasonable because, he says, the district court improperly speculated about the harm to his victims and chose a term that for someone his age amounts to life imprisonment. Yet a sentence within a properly calculated guidelines range, like Chapman's, is presumptively reasonable, *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Tanner*, 628 F.3d 890, 908 (7th Cir. 2010), and that pre-

sumption holds even when a sentence to a term of years will effectively result in life imprisonment, *see Russell*, 662 F.3d at 853-54. The sentence imposed is consistent with the gravity of Chapman's conduct, *see* 18 U.S.C. § 3553(a)(1), (2)(A), as well as the mandate to deter those tempted to commit similar crimes, *id.* § 3553(a)(2)(B). *See Russell*, 662 F.3d at 853-54. And the district court's discussion of victim harm was not error; although sentencing decisions cannot rest on speculation or baseless allegations of harm, *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010), here the court identified actual harm, noting that for the rest of their lives Chapman's victims will live with his crimes. As we recently explained, "child pornography is pernicious precisely because the harm it produces is not limited to the sexual abuse it depicts." *Klug*, 670 F.3d at 800 (citing *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982)).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment.